Johnny B. **MILTON,**
Petitioner-Appellant,

v.

**P.J. MORRIS, Warden,**
Respondent-Appellee.

No. 83–2499.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 12, 1984.

Decided Aug. 12, 1985.

Hug, Circuit Judge, filed concurring opinion.

Beezer, Circuit Judge, concurred in the result, with opinion.

Peter B. Goodman, Brobeck, Phleger & Harrison, San Francisco, Cal., for petitioner-appellant.

John Herbert, Deputy Atty. Gen., San Francisco, Cal., for respondent-appellee.

Before HUG, SCHROEDER, and BEEZER, Circuit Judges.

SCHROEDER, Circuit Judge.

Johnny B. Milton was convicted in California state court of robbery and attempted murder. After exhausting state collateral remedies, he sought relief in federal court and now appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2253.

Milton chose to represent himself rather than be represented by the public defender who, Milton thought, had a conflict of interest. Despite Milton's and the trial court's

efforts to see that he had resources to assist him in the preparation of his defense, he went to trial without having had access to research materials, advisory counsel, means to serve subpoenas, or effective use of a telephone. He claims a denial of due process, relying upon the right of self-representation established in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and the right of meaningful access to the courts recognized in *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). We hold that the petition should be granted.

## FACTS

The facts are not materially disputed. Shortly after his arrest, Milton sought private representation because of an alleged conflict of interest in the public defender's office. The trial court held a hearing on his contentions and denied Milton's motion to appoint private counsel. Milton then chose to represent himself rather than accept the services of the public defender. At the time of the denial of his motion, Milton informed the court that the facilities of the county jail were inadequate for him to prepare a defense and requested five phone calls a day, which the court granted.

A few weeks later Milton moved for access to more current law books. He pointed out that the most recent lawbooks in the county jail were twenty-seven years old. He also complained of a lack of access to the telephone. The court granted him a total of six long distance and seven local telephone calls but denied his request for access to legal materials.

Jail authorities apparently misinterpreted the orders regarding phone calls, and his phone use was in fact severely limited. When this was called to the attention of the trial judge, the trial judge continued the date for trial and granted the request for an investigator. However, because Milton lacked a telephone book, and was still limited by jail authorities in his use of the telephone, he could not find an investigator.

The week before his trial, which was scheduled for a Monday, the trial court appointed a runner to assist in the service of subpoenas. However, jail authorities prevented Milton from contacting the runner on at least one occasion prior to trial. The trial court eventually granted Milton's motion for an expert witness, but not until the Friday immediately preceding the trial.

On the day of trial, Milton had not been able to contact any expert witness or to procure an investigator. Having had no access to current lawbooks, witnesses, or an investigator, Milton, on the day of trial, refused to participate. Not surprisingly, he was found guilty.

## DISCUSSION

Milton's difficulties began when he challenged the ability of the assistant public defender to represent him because of a claimed conflict of interest. His threshold position here is that the state trial court failed to conduct an adequate inquiry to determine whether his allegation was correct. *See Holloway v. Arkansas,* 435 U.S. 475, 482, 98 S.Ct. 1173, 1177, 55 L.Ed.2d 426 (1978). We conclude that the trial court's inquiry was sufficient to determine that no conflict existed that would impede representation. *See United States v. Lee,* 589 F.2d 980, 991 (9th Cir.) (brief discussion showing the absence of any real conflict is sufficient inquiry), *cert. denied,* 444 U.S. 969, 100 S.Ct. 460, 62 L.Ed.2d 382 (1979).

We agree with the state that it offered services of an attorney and the state trial court did not violate Milton's due process rights by refusing to order the state to provide private counsel. As a practical matter, when Milton declined the services of the public defender, he put himself in the same position as the defendant who chooses to represent himself, as has been declared his right under *Faretta,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562.

The question thus becomes whether Milton's due process rights were violated when he was tried without having had any meaningful opportunity to prepare his defense. We hold, in the circumstances of this case, that they were. Despite timely and reasonable requests, Milton was isolated from any means to prepare. The trial court's own orders, which recognized the legitimacy of his need and which would have provided possible avenues of preparation through telephone usage and a runner, were not heeded. After Milton elected to represent himself, the state not only affirmatively failed to provide defense resources, but also materially impeded use of the minimal tools for defense preparation which the trial court tried to ensure.

The state offers no justification, such as cost or security exigencies, for what occurred. We do not believe that a defendant who exercises his right, under *Faretta,* to conduct his own defense must subject himself to the possibility that he will have, through circumstances wholly beyond his control, no opportunity to prepare that defense.[1] The right guaranteed by the fourteenth and sixth amendments to reject a lawyer and represent oneself is premised upon the right of the defendant to make a defense:

> The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be "informed of the nature and cause of the accusation," who must be "confronted with the witnesses against him," and who must be accorded "compulsory process for obtaining witnesses in his favor." Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who

---

1. In this case, the defendant rejected the assistance of counsel with the understanding that he would at least have minimal telephone access. Since even that means of access to the defendant was effectively denied, it is doubtful whether the defendant's decision to reject the public defender and represent himself was knowing and voluntary as required by *Faretta.*

suffers the consequences if the defense fails.

Faretta, 422 U.S. at 819–20, 95 S.Ct. at 2533–34 (footnote omitted). The accused in this case, who made every effort to prepare a defense and was thwarted in those efforts, was denied his "right to make his defense." Id. at 819, 95 S.Ct. at 2533.

■ We need not determine in this case whether Bounds, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72, which involved an unrepresented prisoner seeking collateral review of his conviction, should be interpreted as placing an affirmative duty upon the state to provide a library for the defendant who has rejected the assistance of counsel for trial.[2] Faretta controls this case.

■ Faretta holds that the rights guaranteed by the sixth amendment are personal to the accused. "The rights to notice, confrontation, and compulsory process" mean, at a minimum, that time to prepare and some access to materials and witnesses are fundamental to a meaningful right of representation. Faretta, 422 U.S. at 818, 95 S.Ct. at 2532; see also United States v. Portillo, 633 F.2d 1313, 1324–25 (9th Cir. 1980) (when defendant has sufficient time and ability to conduct research, his right to self-representation is not denied), cert. denied, 450 U.S. 1043, 101 S.Ct. 1763, 68 L.Ed.2d 241 (1981)). An incarcerated defendant may not meaningfully exercise his right to represent himself without access to law books, witnesses, or other tools to prepare a defense. We are mindful that this right is not unlimited. Security considerations and avoidance of abuse by opportunistic or vacillating defendants may require special adjustments. See United States v. Chatman, 584 F.2d 1358, 1360 (4th Cir.

1978) (security risk); United States v. Lane, 718 F.2d 226, 232–34 (7th Cir.1983) (abuse of judicial process). Yet, as the Supreme Court recently stated, "A defendant's right to self-representation plainly encompasses certain specific rights to have his voice heard." McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 949, 79 L.Ed.2d 122 (1984); cf. Mayberry v. Pennsylvania, 400 U.S. 455, 468, 91 S.Ct. 499, 506, 27 L.Ed.2d 532 (1971) (Burger, J. concurring) (trial "integrity" mandates that the judge take measures to ensure that due process is met).

The state relies on United States v. Wilson, 690 F.2d 1267 (9th Cir.1982), cert. denied, —— U.S. ——, 104 S.Ct. 205, 78 L.Ed.2d 178 (1983), in which a defendant who wished to represent himself had counsel appointed to represent him. At trial the defendant complained that he lacked access to a library, but he agreed to have appointed counsel question the witnesses. We held that his conviction should not be reversed simply because he had been denied access to a law library to prepare his defense. We held that since he had an appointed lawyer able to do research had he requested it, and since he received legal assistance in presenting his defense at trial, he was not entitled to "insist on an avenue of [defendant's] own choosing." Id. at 1271 (citing Storseth v. Spellman, 654 F.2d 1349, 1353 (9th Cir.1981)).

■ This case is different. Here, the defendant lacked all means of preparing and presenting a defense, and was unjustifiably prevented from contacting a lawyer or others who could have assisted him. We therefore hold that the state may not un-

---

2. In Bounds, the Court declared, in a post-conviction context, that prisoners have a right of "adequate, effective, and meaningful" access to the courts. 430 U.S. at 822, 97 S.Ct. at 1495. This right does not mandate use of an up-to-date legal library by the prisoners for post-conviction motions when other adequate outside legal assistance is available. See, e.g., Spates v. Manson, 644 F.2d 80 (2d Cir.1981); Kelsey v. State, 622 F.2d 956 (8th Cir.1980). The extent to which Bounds creates rights for pre-trial detainees who decline counsel remains unsettled.

Compare United States v. Lane, 718 F.2d 226, 230 (7th Cir.1983) (court access as defined in Bounds is applicable to pre-trial detainees) (citing Johnson by Johnson v. Brelje, 701 F.2d 1201 (7th Cir.1983) ) with United States v. Chatman, 584 F.2d 1358 (4th Cir.1978) (state satisfied Bounds with the offering of counsel for representation). United States v. Wilson, 690 F.2d 1267, 1271–72 (9th Cir.1982), cert. denied, —— U.S. ——, 104 S.Ct. 205, 78 L.Ed.2d 178 (1983), does not decide the question since the defendant there had accepted representation by counsel.

reasonably hinder the defendant's efforts to prepare his own defense.

Our holding in this case is not inconsistent with *United States v. Chatman*, 584 F.2d 1358 (4th Cir.1978), upon which we relied in *Wilson*, 690 F.2d at 1271–72. At the time that Chatman waived his right to counsel, he was being held in segregated confinement for threatening the judge and repeatedly assaulting prison guards. On the day of his trial he demanded a continuance and access to the law library. The court held that *Bounds*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72, did not require that Chatman have access to the law library after he had validly waived his right to counsel. "[W]e do not read *Bounds* to give an option to the prisoner as to the form in which he elects to obtain legal assistance." *Chatman*, 584 F.2d at 1360. The petitioner in this case is not arguing that *Bounds* entitles him to any particular form of legal assistance. He was deprived of the alternative assistance which the trial court tried to provide.

Other circuits, consistent with our decisions here and in *Wilson*, have held that a defendant who chooses to represent himself does not have a due process right of access to a court maintained library, so long as he is afforded some alternative means for assistance in the preparation of his defense. *See United States v. Lane*, 718 F.2d 226 (7th Cir.1983); *United States v. Garza*, 664 F.2d 135, 142 (7th Cir.1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1620, 71 L.Ed.2d 854 (1982).

The defendant in this case had no means to prepare a defense. When he was denied communication with the outside world, he was denied due process.

The judgment of the district court is reversed and the matter remanded with instructions to grant the petition.

HUG, Circuit Judge, concurring:

I concur in the majority opinion but add these additional thoughts.

There is a distinction between offering a defendant the services of counsel to conduct his defense and offering the counsel's assistance to a defendant who wishes to conduct his own defense. A defendant has the sixth amendment right under *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) to refuse the former and to elect to conduct his own defense. In doing so, he may be offered the assistance of counsel in a variety of ways—for pretrial preparation and during trial. This assistance of counsel to a confined defendant would provide an adequate access to the resources necessary for him to conduct his defense.

The Supreme Court in *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) addressed the question of what constituted meaningful access to the courts by a prisoner seeking collateral relief. Surely no less than those minimum requirements must be afforded to a defendant who is initially defending himself against criminal charges. In conducting his own defense, counsel's assistance would meet these requirements because it would provide access to the outside world and a law library through counsel. However, if a defendant is only offered the services of an attorney to conduct his defense and if he refuses that assistance and is offered no other assistance from counsel, then the defendant must be assured of alternate, adequate access to the resources necessary to conduct his defense through other means.

In this case, other means were authorized by the district court, but not allowed to the defendant. As the majority opinion points out, this deprived the defendant of a reasonable opportunity to conduct his defense. He was not offered counsel's assistance to help him prepare and conduct his own defense.

The case of *United States v. Wilson*, 690 F.2d 1267 (9th Cir.1982) is consistent with this analysis because the defendant in that case was afforded adequate legal assistance from counsel. In *United States v. Chatman*, 584 F.2d 1358 (4th Cir.1978), it appears that the defendant rejected the assistance of counsel in conducting his own defense. *Id.* at 1360. Thus, *Chatman*, as

construed, is also consistent with this analysis.

In summary, a defendant in jail is constitutionally entitled to conduct his own defense. If he elects to do so by rejecting the services of an attorney to *conduct* his defense, he cannot be confined to his jail simply to look at the four walls and appear on the day of trial to defend himself. He must be afforded reasonable access to resources, and providing a counsel's assistance in conducting his own defense is one way of accomplishing this. Other reasonable alternatives consistent with jail or prison management can be utilized. The defendant does not have the right to dictate the alternative chosen so long as a reasonable one is afforded. However, the rejection of an attorney to conduct his defense cannot be considered as a waiver of the reasonable access to the resources necessary to defend himself. To do so would render *Faretta* meaningless to a confined defendant.

BEEZER, Circuit Judge, concurring:

I concur in the result but on a much narrower ground. The state court judge in this case reasonably concluded that in order to adequately prepare his defense, appellant needed to make a certain number of local and long distance phone calls, and to have access to a runner, investigator, and expert witness. The court ordered various custodial officials to permit appellant access to these resources, but later expressly found that its order was violated. Under these circumstances, we can conclude that appellant's due process rights were violated without having to address the difficult issue of the exact scope of the right to prepare a defense. *See Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *United States v. Wilson,* 690 F.2d 1267 (9th Cir.1982), *cert. denied,* — U.S. —, 104 S.Ct. 205, 78 L.Ed.2d 178 (1983). I therefore concur without expressing any opinion on the application of these three cases to the case at bar.