**STATE**

v.

**Timothy KENNEDY.**

**No. 89–493–C.A.**

Supreme Court of Rhode Island.

Feb. 22, 1991.

James E. O'Neil, Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, and Janice M. Weisfeld and Barbara Hurst, Asst. Public Defenders, for defendant.

OPINION

FAY, Chief Justice.

This case is before the Supreme Court on appeal by the defendant, Timothy Kennedy, from a Superior Court jury conviction of robbery, of carrying a pistol without a license, and of committing a crime of violence while armed. The defendant claims that the trial justice committed error (1) by refusing his requests for substitute counsel or, alternatively, by not allowing the defendant to proceed pro se and thereby forcing him to go to trial with an attorney with whom the defendant was dissatisfied, (2) by refusing to pass the case when a complain-

ing witness, in a nonresponsive answer, informed the jury that the defendant had previously been in prison, and (3) by engaging in a discussion of the defendant's bail status after a reading of the verdict but before a polling of the jury. We reverse the judgment of the Superior Court only with respect to the denial of the defendant's request to proceed pro se.

Although the facts of this case are somewhat in dispute, the testimony of the victim, George Walker (Walker), and that of an eyewitness, Donna Johnson Lampkin (Lampkin), were substantially consistent. Walker testified that he lent defendant a small handgun (a .38 caliber nickel-plated special) approximately one week before the February 16, 1984 incident. On February 16, Lampkin, defendant's friend and lover, called Walker at approximately 1 a.m. and informed him that he could come to her apartment, located at 201 Oakland Avenue, to retrieve the gun. Walker subsequently arrived at that residence between 1:15 and 1:30 that same morning. Upon his arrival he was told by Lampkin that defendant had stepped out but that he would be back and Walker could wait. Walker claims that while waiting for defendant, Lampkin made sexual advances toward him. The defendant then entered the room, carrying what appeared to be Walker's gun, and accused Walker of "making his lady." Following this accusation defendant ordered both Walker and Lampkin into Lampkin's bedroom where defendant demanded money from Walker. Walker took $525 from his pocket and handed it to defendant. After receiving this money, defendant instructed Walker and Lampkin to engage in sexual activity. Both offered substantial resistance to this demand, causing defendant to release Walker while maintaining possession of Walker's gun.

Walker initially returned home, called the police, and reported the gun stolen. The next morning, however, Walker went to the police station and furnished the police with a complete account of the events that had occurred earlier that morning. The police subsequently secured an arrest warrant, went to 201 Oakland Avenue, and arrested defendant. At the time of defen-

dant's arrest, Lampkin consented to a search of her apartment, which resulted in the discovery of a small handgun. Tests later revealed defendant's thumbprint located on the handle of the gun.

At trial defendant took the stand in his own defense and testified that he did not have a gun on the evening of February 16 and that he had in fact never seen the gun that was seized at Lampkin's apartment. The defendant instead testified that he was carrying a stick at the time of the alleged incident and that all he took from Walker was a small amount of cocaine wrapped in a $1 bill. Additionally defendant denies ever demanding that Walker and Lampkin engage in any type of sexual activity.

Counsel was first appointed to represent defendant in February 1984. The case was finally reached for trial on October 12, 1988. In the interim defendant had four separate counsel appointed to him. Although the record is somewhat unclear regarding the reasons for the changes in defendant's representation, it would seem that it could be attributed, at least in part, to dissatisfaction on the part of defendant. On the first scheduled day of trial Dominic St. Angelo (St. Angelo), defendant's counsel of record at that time, directed the court's attention to that portion of the pretrial record in which St. Angelo had previously reported that defendant had telephoned him from the Adult Correctional Institutions in March 1987 to inform him that he no longer wanted his representation. The trial justice assigned to the trial calendar at that time, however, determined that because of the number of previous attorneys assigned to defendant, the state was not inclined to appoint other counsel and St. Angelo should therefore remain as standby counsel. The subsequent trial justice examined the record of the prior court proceedings and noted that in light of the number of prior counsel previously assigned and the delay resulting therefrom, the prior justice was correct in determining that the case, if reached, should proceed to trial whether or not defendant had secured alternate counsel. Following this determination the option was left to defendant

either to proceed with St. Angelo or to proceed pro se. The defendant indicated his desire to proceed pro se. The trial justice then engaged in a colloquy with defendant regarding whether this waiver of counsel was "knowing and intelligent." As a result of this inquiry the justice found that the court had no choice but to designate St. Angelo as defendant's counsel.[1]

■ The defendant first contends that the trial justice erred in refusing to grant him a continuance to secure other counsel. Although a criminal defendant has the right to an opportunity to obtain his or her own counsel pursuant to the Sixth Amendment to the United States Constitution and article I, section 10, of the Rhode Island Constitution, this right is not an unqualified one. The right of a criminal defendant to have counsel of his or her choice must be balanced against the public's right to "the efficient and effective administration of criminal justice." *State v. Dias,* 118 R.I. 499, 503, 374 A.2d 1028, 1030 (1977) (quoting *United States ex rel. Carey v. Rundle,* 409 F.2d 1210, 1214 (3d Cir.1969)). The question, therefore, regarding a defendant's request for a continuance to secure alternate counsel is a matter properly left to the sound discretion of the trial justice. *State v. Ashness,* 461 A.2d 659, 663 (R.I. 1983); *State v. Levitt,* 118 R.I. 32, 41, 371 A.2d 596, 601 (1977).

In *State v. Ashness* the defendant was assigned private counsel six weeks prior to trial. On the day of trial, however, the defendant requested a continuance in order to obtain other counsel. That request was denied by the trial justice, and we affirmed, reasoning that the defendant had had ample time following the assignment of counsel either to secure alternate counsel or to make the court aware of his dissatisfaction. The defendant instead chose to wait until the start of trial to make his request. We concluded that the defendant's right to secure counsel of his choice, in this instance, was outweighed by the necessity for "efficient and effective administration of criminal justice." *State v. Ashness,* 461 A.2d at 664.

■ In the case at bar defendant was actively represented by St. Angelo for approximately one year before making his dissatisfaction known. The defendant then had seven months before the start of trial to secure counsel of his choosing. The record does not contain any evidence that defendant had problems obtaining other counsel or that he made any sincere efforts to do so. In fact the record indicates that he apparently had no difficulty telephoning St. Angelo to relieve him of his duties. As we have already stated, the decision whether to grant a continuance is within the sound discretion of the trial justice. In the present case both the former trial justice, as well as the subsequent trial justice, made the determination that no continuances should be granted to defendant to secure alternate counsel. Accordingly we find that the trial justice did not abuse his discretion in denying defendant's motion for a continuance.

■ The defendant argues alternatively that forcing him to trial with an attorney with whom he was dissatisfied was a violation of his constitutional right to proceed pro se. In 1975 the United States Supreme Court considered this precise issue and concluded that "a State may [not] constitutionally hale a person into its criminal courts and there force a lawyer upon him, even when he insists that he wants to conduct his own defense." *Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562, 566 (1975). The prosecutor in the present appeal would like us to distin-

---

1. Although the first trial justice used the phrase "stand-by counsel" when referring to St. Angelo's relationship with defendant, the record is clear that the subsequent trial justice appointed St. Angelo as actual defense counsel and that St. Angelo functioned accordingly. We feel this distinction is important in light of the United States Supreme Court's decision in *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). In *McKaskle* the Court held that the right of self-representation is not violated by the appointment of stand-by counsel even over the objection of the defendant. The Court reasoned that as long as the defendant is allowed to act for himself, as he sees fit, his constitutional right to proceed pro se is satisfied. *Id.* at 188, 104 S.Ct. at 956, 79 L.Ed.2d at 139.

guish *Faretta* from the case at bar by differentiating Kennedy's capabilities with those of the defendant in *Faretta*. Although we agree that Faretta was far more educated, adept, and prepared to plead his own case, this competence is not the issue. *Id.* at 808 n.2, 95 S.Ct. at 2527 n.2, 45 L.Ed.2d at 566 n.2. The *Faretta* Court itself attached no significance to Faretta's competence.

> "We need make no assessment of how well or poorly Faretta had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on *voire dire*. For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself." *Id.* at 836, 95 S. Ct. at 2541, 45 L. Ed. 2d at 582.

In the present matter defendant unequivocally asserted his right to proceed pro se prior to the start of trial. The trial justice communicated to defendant those rights he was forfeiting by proceeding without a lawyer. The defendant acknowledged that he was ill-equipped to defend himself but nevertheless maintained his desire to proceed pro se. Whether defendant could better defend himself with the assistance of an attorney is insignificant; "it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense. Personal liberties are not rooted in the law of averages. The right to defend is personal." *Faretta*, 422 U.S. at 834, 95 S.Ct. at 2540-41, 45 L.Ed.2d at 581. For the reasons stated above, we believe that the trial justice erred in not allowing defendant to proceed pro se.

The defendant also argues on appeal that the trial justice erred not only in refusing to pass the case when a complaining witness informed the jury that the defendant had previously been in prison but also in engaging in a discussion of the defendant's bail status before the jury was polled. After hearing the arguments of counsel and reviewing the briefs submitted by the parties, this court finds that those arguments lack merit and will not therefore be addressed further.

For the reasons set forth above, the defendant's appeal is sustained, the judgment of the Superior Court is reversed, and the case is remanded to the Superior Court for a new trial.