Joseph Walter KAISER, et al., Plaintiffs,

v.

COUNTY OF SACRAMENTO,
et al., Defendants.

No. CIV S–91–0300 GGH P.

United States District Court,
E.D. California.

Dec. 6, 1991.

Paul W. Comiskey, Prisoner's Rights Union, Sacramento, Cal., Richard Herman, Balboa Island, Cal., Paul Persons, Chico, Cal., Mark E. Merin, Dickstein & Marin, Sacramento, Cal., Dan Stormer, Hadsell & Stormer, Los Angeles, Cal., for plaintiffs.

Michele Bach, Steven Kaiser, County Counsel's Office, Sacramento, Cal., for defendants.

## AMENDED ORDER

GREGORY G. HOLLOWS, United States Magistrate Judge.

This matter came on regularly November 7, 1991, for hearing on plaintiffs' motion for a preliminary injunction to provide adequate access to law books, legal materials and legal assistance from other inmates. Paul Comiskey and Richard Herman appeared for plaintiffs. Michele Bach and

Steven Kaiser appeared for defendants. Having now reviewed the record and heard oral argument, the court issues the following order.

## BACKGROUND

On March 12, 1991, plaintiffs filed the underlying complaint in this action, challenging the conditions of confinement at the Sacramento County Jail.[1] Plaintiffs' claims include allegations of overcrowding, failure to provide beds, unequal access for women prisoners, lack of exercise, inadequate access to medical/mental health/dental treatment and lack of law library access. This is plaintiffs' fourth motion for injunctive relief. At issue in the instant motion is whether plaintiffs are entitled to preliminary injunction on their claims of inadequate access to the law library/legal assistance. Specifically, plaintiffs are seeking an order from the court compelling defendants to provide physical access to the law library. Plaintiffs have submitted four declarations in support of their injunctive relief request. Most of the plaintiff's complaints concern the present "slip" or "request" system for obtaining legal research.

Joseph Kaiser claims that he was incarcerated at the Sacramento County Jail (hereinafter referred to as "the Main Jail") from October 12, 1990, to approximately May 30, 1991, and at Rio Cosumnes (hereinafter referred to as "RCCC") from May 30, 1991, to July 30, 1991. He states that he was denied physical access to the law library and was required to use a "slip" or "request" system. Kaiser states that he only received his requests one out of four times and that the books were often outdated. Kaiser also states that defendants failed to allow him to communicate with the jailhouse lawyers.

Joseph Hamburg has been incarcerated at the Sacramento County Jail since March 10, 1991. He is representing himself in his

1. Plaintiffs filed their third amended complaint on September 25, 1991. In their third amended complaint plaintiffs purport to represent both prisoners in the Sacramento County Jail and the Rio Cosumnes Correctional Center. Defendants have challenged the sufficiency of this third amended complaint by filing a motion to dismiss. A hearing is scheduled on defendants' motion for November 21, 1991.

criminal proceedings because he claims the public defender was not providing adequate representation. Plaintiff claims that he has obtained some assistance from jailhouse lawyers. Plaintiff also contends that he is unable to update the case law.[2]

Ronald Marks has been incarcerated at the Sacramento County Jail since September 23, 1991. He is representing himself in his criminal proceedings because his past experience with public defenders shows that they do not have adequate time to defend him. Plaintiff contends that, because of his inadequate access to the proper law books, he was prejudiced at his preliminary hearing. Additionally, plaintiff claims that he does not know what books are available as defendants have failed to provide a list of their legal materials. Marks also states that he has no access to the jailhouse lawyers because they have been moved to other floors.

Sydney Olden has been incarcerated at the Sacramento County Jail since July 5, 1991. He states that he has no access to the jailhouse lawyers nor any physical access to the law library. Olden contends that the slip system forces the inmates to provide the exact cite. The lack of physical access is further compounded by the fact that no listing of legal materials is available to the inmates.

## ANALYSIS

### I. *Preliminary Injunction Legal Standards*

■ The general legal principles applicable to a request for preliminary injunctive relief are well established. To prevail, the moving party must show either "(1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in [the moving party's] favor." *Oakland Tribune, Inc. v. Chronicle Publishing Co., Inc.*, 762 F.2d 1374, 1376 (9th Cir.1985), *quoting Apple Computer, Inc. v. Formula*

*Int'l,* 725 F.2d 521, 523 (9th Cir.1984); *see also Hartikka v. United States,* 754 F.2d 1516, 1518 (9th Cir.1985). The two formulations represent two points on a sliding scale with the focal point being the degree of irreparable injury shown. *Oakland Tribune,* 762 F.2d at 1376. "Under either formulation of the test, plaintiff must demonstrate that there exists a significant threat of irreparable injury." *Id.* In the absence of a significant showing of irreparability, the court need not reach the issue of likelihood of success on the merits. *Id.* However, where an injunction seeks to remedy a constitutional violation and affect the operation of state or local government, there are additional considerations.

■ Generally, irreparable harm is presumed if a violation of the constitution is shown. *Goldie's Bookstore, Inc. v. Superior Court of the State of California,* 739 F.2d 466, 472 (9th Cir.1984). But where a federal injunction is sought against a governmental entity, the party requesting relief must show a threat of "great and immediate," not conjectural or hypothetical, irreparable harm. *City of Los Angeles v. Lyons,* 461 U.S. 95, 113, 103 S.Ct. 1660, 1671, 75 L.Ed.2d 675 (1983); *see also, Orantes–Hernandez v. Thornburgh,* 919 F.2d 549, 557 (9th Cir.1990). Therefore, in the instant case, plaintiffs must show a likelihood of real, immediate and non-conjectural violations of constitutional rights before the court will apply the presumption of irreparable harm.

■ One final point concerning the last prerequisite for injunctive relief, the balance of hardships, must be made. A finding of irreparable harm in the constitutional sense does not also give rise to a presumption that the hardships entailed with an interlocutory injunction favor the party claiming the constitutional violations. A factual showing must be made contrasting the harm to be suffered by the moving party if an interlocutory injunction is not

---

**2.** In several of the declarations, plaintiffs raise claims concerning conditions of confinement other than law library access. However, these issues are not currently before the court. Therefore, the court only considers those allegations related to law library access/legal assistance.

issued with the harm to be suffered by the defending party if injunctive relief is ordered. The difficulty in this assessment is that the harms are not often of the same type. One party's considerations may be financial in nature while another is attempting to protect an intangible right. The differences in the nature of the harms to be suffered in this case classically illustrate the point. While it is true that fiscal constraints cannot serve as an excuse to avoid clear legal obligations, *Miller v. Carlson*, 768 F.Supp. 1341, 1343 (N.D.Cal. 1991), in interlocutory injunctive relief situations demonstrating only "serious questions," a court should be hesitant to impose heavy financial obligations on a party prior to a fully developed record.

## II. *Procedural Arguments*

Defendants have raised a number of procedural arguments which the court will address before proceeding to the merits of plaintiff's request for injunctive relief. Specifically, defendants challenge plaintiffs' standing, pleading and class certification.

■ First, defendants claim that plaintiffs lack standing to challenge the adequacy of the law library/legal assistance because they have failed to allege any actual injury (i.e., they lost a case in whole or in part). Defendants' arguments concerning standing and pleading are erroneous under *Sands v. Lewis*, 886 F.2d 1166 (9th Cir. 1989). In *Sands*, the Ninth Circuit clarified the pleading requirements for a right of access claim: "... if one of the core requirements under *Bounds* is involved— the adequacy of law libraries or legal assistance—then there is no 'actual injury' requirement." *Id.* at 1171. Here, plaintiffs have met the standing requirement by alleging that they were, or will be, denied access to an adequate law library and have

been denied access to legal assistance. Plaintiffs' claims that they are denied access to an otherwise adequate library is scrutinized as one of the core requirements of *Bounds*. *See, Toussaint v. McCarthy*, 801 F.2d 1080, 1109 (9th Cir.1986). Thus, plaintiffs in the instant case have standing to challenge law library/legal assistance access.[3]

■ In addition, defendants claim that the pleading of plaintiffs' third amended complaint is deficient. Defendants note that plaintiffs have only alleged that they were denied access to the law library and have failed to state that they were also denied access to alternative legal assistance. However, plaintiffs need only allege "one of the core requirements under *Bounds*" in order to state a claim for which relief can be granted. *Sands*, 886 F.2d at 1171. Thus, plaintiffs in the instant case have satisfied the pleading requirements merely by alleging denial of access to an adequate law library.[4]

■ Finally, defendants contend that class-wide injunctive relief would be inappropriate as the court has not yet certified the class. The court has provisionally certified the class pursuant to Fed.R.Civ.P. 23(b)(2) pending modification or decertification should it become clear that the class is not maintainable. See April 5, 1991 Order.[5] Accordingly, the court may continue to grant injunctive relief on a class-wide basis.

## III. *Right of Access to the Courts*

It is well settled that states must ensure indigent prisoners meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). In *Bounds*, plaintiffs, incarcerated inmates in the state prison system, filed civil rights actions claiming that the state had denied plaintiffs reasonable access to the courts by failing to provide adequate

---

**3.** Further, it is clear from the plaintiffs' declarations that at least some plaintiffs allege actual injury. *See* the declarations of Hamburg and Marks.

**4.** Again, defendants have not studied plaintiffs' declarations. Plaintiffs Kaiser and Marks complain about the inaccessibility of jailhouse law-

yers, as well as a denial of physical access to the library.

**5.** The court will address defendants' arguments concerning class certification in full on November 21, 1991, when the court considers defendants' motion to dismiss.

access to a law library. The district court held that the sole prison library was severely inadequate and must be made adequate, but that the state was not required to provide legal assistance in addition to an adequate library. The Court of Appeals affirmed the district court's judgment in all material respects, and the Supreme Court in turn affirmed the judgment of the Court of Appeals. The Court held that the constitutional right of access to the courts requires prison authorities to provide prisoners *either* with adequate libraries *or* adequate assistance from persons trained in the law. *Id.* at 828, 97 S.Ct. at 1498. The Court further noted that while adequate law libraries are one constitutionally acceptable method of assuring meaningful access to the courts, they do not foreclose alternative means of achieving this goal. *Id.* at 830–832, 97 S.Ct. at 1499–1500.

The Ninth Circuit has determined that a paging system in a state prison facility is insufficient to guarantee prisoners the right of access to the courts. *Toussaint v. McCarthy*, 801 F.2d 1080, 1109–1110 (9th Cir.1986). The unconstitutional paging system in *Toussaint* consisted of a process in which the correctional staff provided prisoners with requested law books as an alternative to physical access to the institution's law library. However, a jail facility serves different purposes than a state prison, which houses, for the most part, convicted prisoners. The majority of persons in need of a law library in a jail setting would be those persons awaiting trial on criminal offenses.

At issue in the instant case is whether *Bounds* and its progeny apply with equal force to pre-trial detainees as they apply to convicted prisoners. The primary issue here centers around the interplay between the right of access to the courts guaranteed by *Bounds* and *Toussaint* with the right of self-representation guaranteed by *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). More specifically, the court must consider wheth-

er a prisoner may insist on either physical access to a law library or access to non-lawyer trained legal assistance once the court offers to appoint a lawyer for the prisoner's case. In addition, as the provisionally certified class consists of both pre-trial detainees and convicted prisoners, the court will also discuss the differing rights of those prisoners who have been sentenced, but remain incarcerated in the Sacramento County jails (either the Main Jail or RCCC).

## IV. *Pro Per Pre-trial Detainees* [6]

■ Defendants correctly contend that the extent to which *Bounds* creates rights for pre-trial detainees who assert their right of self-representation remains unsettled. *Milton v. Morris*, 767 F.2d 1443, 1446, n. 2 (9th Cir.1985). In *Milton*, a prisoner filed a federal habeas petition claiming denial of due process. Petitioner had chosen to represent himself in his original criminal trial rather than accept appointed counsel. Petitioner went to trial without having access to research materials, advisory counsel, means to serve subpoenas, or effective use of a telephone. Petitioner challenged his conviction on the grounds that he had been denied the right of self-representation and the right of meaningful access to the courts. The district court denied his petition, but the Ninth Circuit reversed the judgment of the district court and remanded with instructions to grant the petition.

The Ninth Circuit held that the outcome of the case was determined by the Sixth Amendment and the Supreme Court's holding in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In *Faretta*, the Court held that a criminal defendant has a constitutional right of self-representation which allows one to make one's own defense personally without the assistance of counsel. *Id.* Following *Faretta*, the Ninth Circuit held that at a minimum the Sixth Amendment guaranteed a

---

**6.** For ease of reference, the term "pre-trial detainees" will be used not only to encompass those persons awaiting trial, but also those persons who represent themselves in criminal post-

trial proceedings. With respect to the present class, no party contests the fact that pre-trial detainees have the right to appointed counsel for their criminal proceedings.

petitioner time to prepare his defense and some access to materials and witnesses which are fundamental to a meaningful right of representation. *Milton*, 767 F.2d at 1446, citing *Faretta*, 422 U.S. at 818, 95 S.Ct. at 2532. Moreover, the Ninth Circuit stated:

> We need not determine in this case whether *Bounds*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72, which involved an unrepresented prisoner seeking collateral review of his conviction, should be interpreted as placing an affirmative duty upon the state to provide a library for the defendant who has rejected the assistance of counsel for trial. *Faretta* controls this case.

*Milton*, 767 F.2d at 1446.[7]

The Ninth Circuit declined to state the effect of *Bounds* (if any) on prisoners who are pre-trial detainees declining counsel.

The court cannot fail to note the irony of the situation where a pre-trial detainee representing himself, and who thereby has a great need for library access, will be denied that access. Plaintiffs argue that the pretrial detainee is being penalized for the assertion of his *Faretta* rights. On the other hand, the state should not have to subsidize the exercise of *Faretta* rights with respect to library access for pre-trial detainees when it already provides a more than adequate substitute. Defendants contend that a county may certainly choose to give *Bounds* access to a law library in addition to appointed counsel, but it is not mandated to do so.

Therefore, the remaining issue is whether *any* access to a law library is mandated by *Milton*, and if so, the parameters of that access. The Ninth Circuit has not expressed an entirely consistent position on this issue. In *Taylor v. List*, 880 F.2d 1040 (9th Cir.1989), the Ninth Circuit was faced with a 42 U.S.C. § 1983 claim by a convicted defendant that, because he had been denied access to a law library when he was representing himself, he had suffered a constitutional deprivation. *Taylor* interpreted *Milton* as follows:

> We then went on to hold that the Sixth Amendment right to self-representation recognized in *Faretta* includes a right of access to law books, witnesses, and other tools necessary to prepare a defense.

*Taylor*, 880 F.2d at 1047.

Under the *Taylor* holding, clearly *some* access to a law library is required for the incarcerated pre-trial detainee. However, one year later the Ninth Circuit appeared to restrict access to a law library when it stated:

> As this court's decision in *Wilson* suggests, there is nothing constitutionally offensive about requiring a defendant to choose between appointed counsel and access to legal materials; *the sixth amendment is satisfied by the offer of professional representation alone.*

*United States v. Robinson*, 913 F.2d 712, 717 (9th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 1006, 112 L.Ed.2d 1089 (1991) (emphasis added).[8] Harmonizing the authority, this court believes that an incarcerated pre-trial detainee is entitled to a limited, "non-*Bounds*" access to law books and other legal materials. This court also finds that the county is not obliged to facilitate non-lawyer legal assistance for the pre-trial detainee.

Additionally, the court notes that the weight of authority in other circuits that have considered this issue supports the court's conclusion that defendants are not mandated to supply *Bounds/Toussaint* access to law libraries or legal assistance. *United States v. Chatman*, 584 F.2d 1358 (4th Cir.1978) (to extent *Bounds* even applies, state satisfied *Bounds* with the offering of counsel for representation); *United States ex rel. George v. Lane*, 718 F.2d 226, 231 (7th Cir.1983) (offer of court-ap-

---

**7.** The *Milton* court cited *United States v. Wilson*, 690 F.2d 1267 (9th Cir.1982), *cert. denied*, 464 U.S. 867, 104 S.Ct. 205, 78 L.Ed.2d 178 (1983), which defendants argue, with some merit, unequivocally decided that a pre-trial detainee who was offered counsel had no right to a law library access. *Milton* held that *Wilson* was consistent with its "some access" holding.

**8.** However, *Robinson* goes on to cite *Milton* for the "some access" requirement, which *Milton* derived from the Sixth Amendment.

pointed counsel to represent a defendant satisfies the constitutional obligation of a state to provide a defendant with legal assistance under the Sixth and Fourteenth Amendments); *United States v. Pina*, 844 F.2d 1, 5, n. 1 (1st Cir.1988) (when a defendant refuses assistance of appointed counsel he has no right to unqualified access to a law library or the materials therein); *United States v. Smith*, 907 F.2d 42, 44 (6th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 521, 112 L.Ed.2d 533 (1990) (no interplay between *Bounds* and *Faretta* that would require a trial court to permit a pro se defendant to have access to a law library). Although the Ninth Circuit has seemingly avoided explicitly holding that the states may satisfy *Faretta* by offering appointed counsel only, case law from the other circuits carries some authoritative weight. Thus, to the extent that other circuits have determined that *Bounds* does not require the states to provide physical library access to pre-trial detainees who exercise their *Faretta* rights, this court is persuaded.

■ The only remaining issue is how much access will satisfy this court's "some access" requirement. Defendants have submitted declarations in which they indicate that the County provides some access to legal materials, witnesses and other tools necessary to prepare a defense.[9] According to the Earles declaration, the jail librarian provides a "pro per" information package. A person representing himself also receives copies of the applicable code section(s) related to his charges and rules of court. The County also provides several information packets pertaining to *Marsden*

motions (ineffective assistance or conflict with counsel), habeas corpus, acquisition of experts, criminal motions, 42 U.S.C. § 1983 actions and several other areas. In order to obtain specific law books, the inmate submits a "kite" to custody staff. The request may be for specific reference materials, or a more generalized request for books in a certain legal area. Persons representing themselves can obtain legal materials within a day of a request; the general inmate population can obtain requested references within a week. The law librarian will also "Shepardize" the cases provided to the inmate upon request.

Plaintiffs' declarations describe this system as working more poorly in practice than it is theoretically supposed to work. However, the court finds for the purposes of plaintiffs' interlocutory injunctive relief motion, that whatever the invalidity of a paging system with respect to incarcerated prisoners after conviction, *see Toussaint*, and its inevitable breakdown in some cases, a pre-trial detainee's Sixth Amendment *Faretta* rights are satisfactorily supplemented by the access provided by the County Jail personnel.

Therefore, the court finds that although the plaintiffs have raised serious legal issues with respect to law library access for pre-trial detainees, they have not raised serious *questions* concerning the likelihood that they will ultimately receive injunctive relief. This court has resolved the legal question, and it no longer remains. There is no further development of the issue *with respect to pre-trial detainees* in this case that would likely change the result.[10] Ac-

---

**9.** The Honorable William Ridgeway (Superior Court Judge) explains the County's general policy for providing assistance to pro per criminal defendants. Additionally, Jack Earles (law librarian) indicates that this general policy was followed for each of the plaintiffs who submitted declarations. The County's policy requires the Sacramento County Jail to furnish a place to prepare the defense of the case, furnish the defendant with supplies (i.e. paper, pencils, etc.), allow the defendant to receive legal materials, permit the defendant to have up to ten books in his cell at one time, allow use of a telephone, aid defendant in subpoenaing witnesses (maximum of four), provide unlimited legal mail privileges, authorize the use of an

investigator, and in-jail visits with prospective witnesses.

**10.** The "serious questions" factor in the injunctive relief analysis is more appropriately directed at questions of mixed fact and law. Purely legal issues, although they may be close and difficult, are usually resolved without the need for further development of the record (e.g. motions to dismiss or summary judgment). Once the court makes a legal determination, the losing party does not generally have any further hope for success on that particular legal issue. However, the court, of course, is not finally ruling on the issue. If plaintiffs present evi-

cordingly, plaintiffs' request for injunctive relief for pre-trial detainees representing themselves in their criminal actions is denied.

## V. *Convicted Prisoners* [11]

Turning to the claims of the other group of plaintiffs, the convicted prisoners, *Bounds* clearly applies. Thus, in considering plaintiffs' request for injunctive relief, the court must consider whether defendants have met *Bounds* by providing either meaningful access to an adequate law library or adequate assistance of persons trained in the law. First, with respect to the claims of inadequate access to a law library, plaintiffs are clearly correct that a "paging" or "slip" system alone is unconstitutional. *Toussaint v. McCarthy,* 801 F.2d at 1080 (9th Cir.1986). As no one disputes that the Sacramento County Jail uses a slip system, it would appear at the threshold that the law library fails to provide convicted inmates with the right of access to the courts.

Although a paging system alone is unconstitutional, some authority supports defendants' argument that a paging system in conjunction with legal assistance will satisfy *Bounds. Williams v. Leeke,* 584 F.2d 1336 (4th Cir.1978), *cert. denied,* 442 U.S. 911, 99 S.Ct. 2825, 61 L.Ed.2d 276 (1979) (state could use paging system in conjunction with providing state-funded legal counsel or trained legal assistants); *See also, Toussaint,* 801 F.2d at 1109–1110. Defendants attempt to distinguish their system from the *Toussaint* paging system by claiming that they also provide legal assistance to the inmates. Defendants note that one of the librarians is a certified paralegal and that both librarians assist the inmates by obtaining general references, narrowing the scope of legal inquiries and providing inmates with compiled packages of legal materials and forms. Thus,

defendants contend that their system is completely different from the *Toussaint* system where inmates had to use exact citations in order to obtain legal references.

However, it is questionable whether defendants have provided the necessary "legal assistance" to circumvent the unconstitutional paging system. The problems with the *Toussaint* paging system are not limited to the requirement of providing exact citations. In order to conduct meaningful legal research, prisoners must be allowed to browse through legal materials. *Williams,* 584 F.2d at 1339 (legal research often requires browsing through various materials in search of inspiration). Defendants cannot alleviate the problems of a paging system merely by providing assistance in locating citations. In addition, although defendants attempt to characterize the assistance of the law librarians as "legal assistance," it is unclear whether this type of assistance will satisfy *Bounds. See, e.g., Williams,* 584 F.2d at 1339; *Toussaint,* 801 F.2d at 1110 (citing other circuit authority defining legal assistance).

Because plaintiffs have raised serious, non-speculative questions concerning the constitutional adequacy of the paging system for convicted prisoners, the court will presume a showing of irreparable injury. However, the grant or issuance of interlocutory injunctive relief depends upon the balance of hardships. Plaintiffs have not shown that the County's present system adversely affects many convicted inmates. Moreover, plaintiffs' general request that this court order "physical access to the law library" is devoid of any practical specifics. Should the court order the County to initiate an escort system with the attendant costs associated with a security escort? Should the court order the placement of the law library in a newly constructed space? [12] How should a "jailhouse lawyer" legal assistance plan be initiated? Without know-

---

dence that the paging system works so poorly on an overall basis that the system does not even provide "some access", the matter will be revisited at time of final adjudication.

**11.** "Convicted Prisoners" includes those persons who are potentially eligible to file habeas cor-

pus petitions or participate in other civil actions. These persons have no right to appointed counsel.

**12.** The present space is sufficient only to shelve the reference materials.

ing the specifics of the presumptive harms entailed in the inadequate law library access claim, and without having finally adjudicated whether the County's "paging system-plus" meets the requirements of *Bounds/Toussaint,* the court is unwilling to assess *at this time* the probable heavy costs associated with the request for relief.

However, plaintiffs also request that defendants post a listing of all legal references available in the law libraries. Defendants do not assert any difficulty or hardship would arise out of posting a copy of the reference materials available in the jail law library. A copy of the reference listing could be conspicuously posted in the dayrooms on the several floors of the jail facility. Therefore, this court will order the placement of a copy of the listing of legal reference materials contained in the Main Jail and RCCC in a conspicuous place on each floor of the living areas.

### CONCLUSION

In accordance with the court's above-stated reasoning and its announcements to the parties in open court, IT IS HEREBY ORDERED that plaintiffs' request for a preliminary injunction regarding law library access is denied, with the exception that defendants are ordered to post the lists of legal reference materials as stated previously.