STATE

v.

**Roger E. BRUYERE.**

**No. 99–122–C.A.**

Supreme Court of Rhode Island.

June 6, 2000.

**1286**

Virginia M. McGinn, Aaron L. Weisman, Providence, for Plaintiff.

Paula Lynch Hardiman, Paula Rosin, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court for oral argument on May 9, 2000, pursuant to an order that directed both parties to appear in order to show cause why the issues raised by this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided at this time.

The defendant, Roger E. Bruyere (defendant), appeals from a judgment of conviction entered in Superior Court in which a jury found him guilty of first-degree arson of the Warwick Community Police Station (police station) in violation of G.L. 1956 § 11–4–2. The trial justice denied defendant's motion for a new trial and sentenced him to thirty-five years imprisonment, with fifteen years to serve and twenty years suspended. This appeal followed.

On May 17, 1996, the Warwick police issued defendant a citation for operating a motor vehicle without a license. When the police discovered that the car was unregistered, they had it towed. That night, after attending a party, defendant and some friends went to a DB Mart, where defendant purchased a gallon container of windshield washer fluid and $1.30 worth of gasoline. The store clerk testified that he saw defendant dump out the windshield wiper fluid and fill the container with the gasoline. The container, which contained a small amount of gasoline, was found near the police station and admitted into evidence.

Edgar Coates drove defendant and several others to the DB Mart that night. He testified that he heard his passengers discuss setting fire to the police station. Two other men in the car that night, Edwin Otero and Raymond Russo, were called by defendant as witnesses, but they invoked their Fifth Amendment privilege on cross-examination, and the jury was instructed to disregard their testimony.

At his arraignment, defendant stated that he wished to proceed *pro se*. He stated that he had his G.E.D. (high school equivalency diploma) and had started college but later dropped out. A Superior Court justice informed defendant that this

was a serious charge and that if convicted he faced a sentence of life imprisonment. After the hearing, attorney Mark Smith (Smith) was appointed to act as standby counsel for defendant. At a subsequent hearing, defendant moved to have Smith withdraw. Another justice, after addressing the seriousness of representing oneself and inquiring into defendant's background, ruled that defendant understood the "consequences of representing himself" and granted his motion.[1]

At that same hearing and at a later hearing, the trial justice denied defendant's motion to have other inmates at the Adult Correctional Institutions (ACI) assist him. He stated that defendant had been furnished with more than adequate legal representation and had declined it "very emphatically." A jury was then impaneled and the prosecutor gave his opening statement.

The next morning, defendant requested that an attorney be provided to help him with the trial. He specifically requested that attorney Charles Rogers (Rogers) represent him. Rogers had represented defendant at his violation hearing in connection with the arson charge. The trial justice said that he would not excuse an already impaneled jury because jeopardy had attached. He did state that he would wait to determine whether Rogers would represent defendant. The trial justice continued the trial until the next day, after efforts to locate Rogers were unsuccessful. The trial justice analogized the situation to that of a request for a continuance to change attorneys after trial had commenced. Rogers declined the next day to act as counsel because he felt that he would not be prepared to begin a trial without a continuance. The trial justice denied defendant's request to continue the case, and the trial continued.

On appeal, defendant contends that the trial justice abused his discretion by refusing to allow him to withdraw his waiver of counsel. Specifically, he argues that the trial justice erred by "(1) refusing to permit Attorney Rogers to represent [defendant] when he was willing to do so; (2) failing to even ask Attorney Rogers how long he would need to prepare for trial; (3) refusing to permit Attorney Rogers an opportunity for meaningful consultation with [defendant]; and (4) in failing to weigh the considerations set forth by this Court in *State v. Ashness,* 461 A.2d 659, 664 (R.I.1983)."

A defendant may waive the right to counsel and appear *pro se* if his choice to do so is knowingly and intelligently made. *See Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 581 (1975). He must be "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 582 (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268, 275 (1942)). Here, three justices of the Superior Court cautioned defendant against proceeding *pro se* and made him aware of the disadvantages of his choice. In front of each justice defendant expressed his desire to represent himself. The defendant clearly made a valid waiver of his right to an attorney. The issue then is whether the trial justice abused his discretion by denying defendant a continuance to obtain the assistance of counsel after the trial had begun.

"[A] motion for a continuance is addressed to the sound discretion of the trial justice, and his or her decision will not be overturned on appeal absent an abuse of discretion." *State v. Gatone,* 698 A.2d 230, 239 (R.I.1997). The right to

---

1. We would admonish justices of the Superior Court to resist efforts by defendants to reject the services of standby counsel. Even if the defendant does not avail himself or herself of the benefits of standby counsel, experience has shown that in emergency situations standby counsel may be of assistance as consultants in legal matters.

obtain counsel "is not an unqualified one." *State v. Kennedy,* 586 A.2d 1089, 1091 (R.I.1991). This right is balanced against "the public's right to 'the efficient and effective administration of criminal justice.'" *Id.* (quoting *State v. Dias,* 118 R.I. 499, 503, 374 A.2d 1028, 1030 (1977)).

In *Ashness,* the defendant told the trial court on the first day of his trial that he was dissatisfied with his attorney. He requested a continuance so that he could retain private counsel or have another public defender assigned to his case. We upheld the trial justice's decision to deny the continuance. We said that the trial justice did not abuse his discretion when he "weigh[ed] the interest of the defendant in securing counsel of his choice against the interest of the public in an efficient and effective judicial system." *State v. Ashness,* 461 A.2d 659, 663–64 (R.I.1983). In *Ashness,* the defendant had ample time before trial to secure another attorney; the state had witnesses ready to testify, and the case was set for a jury trial. In that situation, "the necessity for the efficient and effective administration of criminal justice outweighed defendant's interest in securing counsel of his choice." *Id.* at 664.

Other state and federal courts agree with our balancing test. In *Commonwealth v. Johnson,* 424 Mass. 338, 676 N.E.2d 1123 (1997), the Supreme Judicial Court of Massachusetts, in a factually similar case, held that the defendant was not entitled to a continuance after he waived his right to counsel and knowingly elected to proceed *pro se,* when on the morning of his trial he changed his mind and asked for counsel. The fact that "standby counsel was not prepared to go forward as trial counsel did not require the judge to grant a continuance." *Id.* at 1126. After balancing the interests of the defendant and the prosecution, witnesses and victims in the case, the court upheld the trial justice's denial of a continuance. It noted that even though the defendant had elected to exercise his constitutional right to act as his

own attorney, the "Constitution, however, does not require that a defendant who sees the folly of his choice on the eve of trial be granted a continuance." *Id.* at 1127.

In another factually similar case, *United States v. Solina,* 733 F.2d 1208 (7th Cir. 1984), the defendant told the court at his arraignment that he would proceed *pro se.* Standby counsel was appointed to assist him. On the day his trial began, he asked that his standby counsel take over the case for him. His counsel asked for a continuance to prepare for the trial, which was denied. In upholding that decision, Judge Posner wrote, "[a] criminal defendant has a constitutional right to defend himself; and with rights come responsibilities. If at the last minute he gets cold feet and wants a lawyer to defend him he runs the risk that the judge will hold him to his original decision in order to avoid the disruption of the court's schedule that a continuance granted on the very day that trial is scheduled to begin is bound to cause." *Id.* at 1211–12.

■ In the instant case, defendant was arraigned in June 1997 and, thereafter, entered his *pro se* appearance. He filed and argued numerous pretrial motions. He prevailed on some of those motions. Three Superior Court justices inquired into whether defendant was aware of the perils of proceeding *pro se.* A week before the trial was to begin, the trial justice asked defendant if he was ready to begin trial. The defendant replied that he was ready. The justice then told defendant that he was going to treat him just like any other lawyer and that he would expect the same conduct from him. The defendant replied, "[y]es, your honor." Also, in the instant case, the state had a witness who was scheduled to travel from Florida; several witnesses who were unwilling to testify and who had to check in with the prosecutor on a daily basis to be informed when they were expected to testify; and seven policemen who appeared in court waiting to testify. The prosecutor asked the trial justice to consider the disruption

in the lives of these people if he were to grant a continuance and also asked the court to consider the disruption it would cause to the court's own calendar. The trial justice did not abuse his discretion in denying defendant's motion for a continuance. As we stated in *Ashness*, the trial justice must balance the defendant's interests against the public's interest in an "efficient and effective judicial system." *Ashness*, 461 A.2d at 663–64. Here, the balance weighed in favor of the public.

■ The defendant also argues that his due process rights were violated because he did not have access to the tools necessary to defend himself. He states that he was severely handicapped in representing himself at trial because he did not have access to a telephone, use of a writing implement, and access to the law library. He argues that because he did not know that he would not have access to these tools, he did not knowingly and voluntarily waive his right to counsel. He argues that the trial justice erred by not doing enough to ensure that he had access to these tools.

The defendant relies on *Milton v. Morris*, 767 F.2d 1443 (9th Cir.1985), for support. In that case the Court of Appeals for the Ninth Circuit held that the defendant's due process rights were violated when he lacked all means of preparing and presenting a defense. There, prior to trial, the defendant informed the court that the facilities at the jail were inadequate to prepare a defense. He requested access to a phone and current law books. The trial justice granted his request for phone calls, but denied his request for law books. The jail authorities misinterpreted the order regarding the phone calls and limited his use of the phone. A week before the trial, the trial justice appointed a runner to serve subpoenas for the defendant, but the jail authorities prevented the defendant from contacting the runner.

The court held that the defendant's due process rights were violated when "the state not only affirmatively failed to provide defense resources, but also materially impeded use of the minimal tools for defense preparation which the trial court tried to ensure." *Milton*, 767 F.2d at 1445. The court did not believe that a defendant who exercises his right to represent himself under *Faretta* "must subject himself to the possibility that he will have, through circumstances wholly beyond his control, no opportunity to prepare that defense." *Id.* The court held that "[a]n incarcerated defendant may not meaningfully exercise his right to represent himself without access to law books, witnesses, or other tools to prepare a defense." *Id.* at 1446. However, this right is not unlimited, and "[s]ecurity considerations and avoidance of abuse by * * * vacillating defendants may require special adjustments." *Id.*

In the instant case, defendant did not request access to a phone or the ability to subpoena witnesses until after the trial began. The trial justice extended valuable assistance in arranging for defendant to contact witnesses. The trial justice's clerk filled out the subpoena forms for defendant. Further, the trial justice made numerous attempts to ensure that defendant had access to improved phone service at the ACI and allowed defendant to speak with his witnesses in court before calling them to the stand. There was no indication that defendant failed to contact or was deprived of any witness because of deficient phone service. Moreover, defendant told the trial justice that he had had sufficient time to speak with his witnesses.

This was not a situation such as *Milton* in which the state "affirmatively failed to provide defense resources." 767 F.2d at 1445. Here, defendant did not make his request until after the trial began, and, given the restraints of a prison setting as well as the efforts made by the trial justice, it cannot be said that defendant's due process rights were violated.

For the reasons stated, the defendant's appeal is denied and the judgment of con-

viction is affirmed. The papers in the case may be remanded to the Superior Court.