**STATE**

v.

**David DUBOIS.**

No. 2009–292–C.A.

Supreme Court of Rhode Island.

Feb. 20, 2012.

Lauren S. Zurier, Department of Attorney General, for State.

John R. Grasso, Esq., Providence, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on October 26, 2011, on appeal by the defendant, David Dubois (defendant or Dubois), from a judgment of conviction for five counts of second-degree child molestation. He was sentenced to five concurrent

terms of thirty years at the Adult Correctional Institutions, twelve years to serve and the balance suspended, with probation. On appeal to this Court, Dubois contends that the trial justice erred by: (1) denying the defendant's motions for a mistrial; (2) limiting defense counsel's direct examination of two witnesses; and (3) allowing testimony concerning several uncharged incidents of sexual assault in violation of Rules 403 and 404(b) of the Rhode Island Rules of Evidence. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## Facts and Travel

On April 18, 2007, a six-count criminal information was filed against Dubois in Superior Court, alleging one count of second-degree sexual assault under G.L.1956 § 11–37–4, and five counts of second-degree child molestation in violation of § 11–37–8.3. The information charged that the offenses occurred between 1992 and 1998.[1] The complainants named in the information were members of defendant's family: two sisters, Sarah and Lauren, are defendant's nieces by his marriage to Dorinne Dubois (Dorinne); Emily, a cousin through defendant's marriage to Dorinne; and Natalie, defendant's niece by his marriage to Dorinne.[2] The complaining witnesses ranged in age from approximately five to eleven years old at the time of the alleged assaults.[3] The second-degree sexual assault charge, in which Natalie was the complainant, was dismissed by the state

pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure, based on the statute of limitations. However, the trial justice permitted Natalie to testify as a Rule 404(b) witness for the state.

Prior to trial, the trial justice ruled on several motions *in limine*, including the state's motion to allow testimony in accordance with Rule 404(b). The state sought to introduce the testimony of defendant's niece, Natalie—the subject of count 1 of the criminal information, which had been dismissed on statute of limitations grounds. Specifically, the state sought to utilize evidence of three incidents of sexual misconduct: an event in a swimming pool; a second incident in which defendant allegedly played a game of "show me yours, I'll show you mine;" and a third incident—when Natalie was fourteen years old—in which defendant touched her breasts under her shirt. The state argued that a nexus existed between the first two incidents and those alleged by other complainants, and that the third incident was corroborative and thus served as probative evidence.

In a careful ruling, the trial justice found that the incident when Natalie was fourteen years old was inadmissible on the grounds that the conduct was not sufficiently similar to the other complainants' allegations that were set forth in the criminal information. However, the trial justice ruled that testimony pertaining to the two other incidents that occurred when Natalie

1. Although the events occurred during the mid–1990s, all but one incident remained undisclosed for approximately a decade.

2. The names of the complainants have been changed to protect their privacy.

3. The criminal information charged defendant with the following counts: count 1, violation of G.L.1956 § 11–37–4 by engaging in sexual contact by force or coercion with Nata-

lie on diverse dates between 1997 and 1998; count 2, violation of § 11–37–8.3 by engaging in sexual contact with Emily on diverse dates between 1994 and 1996; counts 3, 4, and 5 all pertained to defendant's violation of § 11–37–8.3 by engaging in sexual contact with Lauren on diverse dates between 1992 and 1996; and count 6, violation of § 11–37–8.3 by engaging in sexual contact with Sarah on diverse dates between 1993 and 1996.

was a young child were admissible under Rules 403 and 404(b) because this conduct, if believed, showed defendant's "intent or lewd disposition toward [Natalie] and, as a result, toward the named complaining witnesses." The trial justice further elaborated on the admissibility of the uncharged incidents, stating:

> "It just seems to me that as far as [Natalie] is concerned, that there is such a connection, the same kinds of acts, playfulness, games and so forth, the relationship with the other children, the fact that it seems to be taking place at the defendant's house would all suggest that this is the kind of household situation that you would see as cases where [Rule] 404(b) evidence can be utilized."

At trial, complainants Sarah and Lauren testified that defendant had acted inappropriately toward them on several occasions when they were between the ages of five and eleven.[4] Sarah testified that defendant's wife, Dorinne, occasionally would babysit the girls. On one such occasion, when Sarah was seven or eight, she was playing upstairs with Lauren, defendant and his stepdaughter, Julie, when defendant suggested that they play hide-and-seek. Sarah testified that when defendant opened the closet door where she was hiding, he was not wearing pants; he told Sarah that since he had shown her his private parts, she needed to show him her "stuff." Sarah refused, but defendant, still pantless, told the three girls to touch each other and to touch him. The defendant had Sarah pull down her pants and he touched her vagina, underneath her underwear. Sarah also stated that she saw defendant touch Lauren's "boob" and that "he made [Lauren] touch his penis." Several months later, Sarah disclosed the inci-

dent to her uncle Ross, but he "shrugged" it off. Years would pass before Sarah told anyone else.

Lauren testified about two separate incidents that occurred when she was between ages five and six. In the first incident, defendant had Lauren, along with Julie, play a sexual game in which they each went into different rooms. When defendant entered the room that Lauren was in, he exposed his erect penis and told her to touch it and say "ooh" so the girls in the other room could hear. About a month later, defendant played a similar hide-and-seek game with Lauren, Julie, and Sarah, in which defendant exposed himself, had Lauren touch his penis, and he touched Lauren's chest area. Lauren did not reveal the sexual misconduct until she was a teenager.

It was Sarah who first disclosed the abuse, thereby initiating a chain of events culminating in this prosecution. At her mother's urging, Lauren went to work with defendant over the summer when she was approximately fifteen years old. Lauren testified that she did not want to work with defendant that summer, but finally did so. Therefore, it fell upon Sarah to explain to their father that the likely reason for Lauren's reluctance to work with defendant was that defendant had sexually molested Sarah when she was younger and that Lauren would not want to have defendant expose himself to her. Their father relayed the information to their mother, who confronted Lauren, who then confirmed the allegations. After Sarah and Lauren had revealed their experiences, other female family members came forward about similar incidents involving defendant. The family then convened a meeting to confront defendant about the

---

4. At the time of trial, Sarah was twenty-two years old and Lauren was twenty-one years old.

abuse allegations. Sarah testified that during the confrontation defendant admitted exposing himself, but he stated that he had seen a doctor and was on medication; he denied touching any of the girls. After the meeting, the police were contacted, and an investigation and prosecution ensued.

At trial, the state revealed at a sidebar conference that Lauren was expected to testify about a sexual advance defendant made toward her during the summer she worked with him, and that the incident caused Lauren's relationship with defendant to sour. The trial justice prohibited Lauren from testifying about this uncharged encounter. When the questioning continued, the prosecutor asked Lauren what her relationship with defendant was after the summer she spent living at his house, to which she responded that she "hated Dave." The defendant objected and moved for a mistrial; because Lauren had just testified that she had a good relationship with Dubois prior to that summer, defense counsel argued that her statement that she hated him could have implied the occurrence of an additional sexual encounter, which the trial justice had just ruled inadmissible. The defendant argued that a cautionary instruction would not negate the prejudicial impact of this statement. The trial justice disagreed and decided that he would give a cautionary instruction, directing the jury to disregard Lauren's response about her feelings toward defendant.[5]

Later in the trial, Natalie, the Rule 404(b) witness, who is defendant's niece by marriage, testified for the state. Natalie was asked to recall any incidents concerning defendant that occurred when she was approximately ten years old and that changed her relationship with Dubois. During her direct examination, the state asked for a cautionary instruction. The trial justice instructed the jury to bear in mind that defendant was not charged with any offense stemming from conduct about which the witness would testify, and that the evidence was admitted for the "limited purpose * * * of determining the defendant's intent or lewd disposition."[6]

5. The trial justice instructed the jury:

"Ladies and gentlemen, you recall yesterday when I gave you the preliminary instructions, I told you that there would be times when there would be certain responses that might be given to a question and I would have to make a ruling and I might tell you at some point that the question is one that—or the answer is one that's going to be stricken from the record and the jury is to disregard it. Do you remember I gave you the analogy to an unringing of a bell, do you all recall that yesterday? And essentially, that's where we're going right now because I'm going to ask you to follow that guidance and that instruction as I tell you that with regard to this witness' response to the question as to what her relationship was, what her relationship with the defendant was, you are to totally disregard her response and it is stricken from the record."

6. The trial justice's full instruction to the jury stated:

"Earlier this morning, ladies and gentlemen, you recall I gave you an instruction, and at this time I'm going to repeat it, because you recall that I was speaking about the police officer's testimony as it pertained to [Natalie]. I'm going to repeat that instruction to you now as [Natalie] begins her testimony.

"You're going to be hearing that on other occasions, the defendant allegedly was involved in other misconduct and it's going to be involving this particular witness. Bear in mind that he's not been charged with any offense arising out of that misconduct and you may not draw the inference that the defendant committed the criminal offenses he's on trial for simply because on prior occasions he may have acted improperly. However, the State may introduce such evidence for other more-limited purposes.

"To the extent that you decide to consider this evidence, it is admitted for your consid-

A sidebar conference ensued in which defense counsel argued that evidence of uncharged acts that occurred when Natalie was between ten and twelve years old should be excluded because they were too remote in time to show intent, lewd disposition, or continuity. The trial justice disagreed and reiterated that his prior *in limine* ruling was based on Rule 404(b) considerations. The trial justice found that there was a nexus between the incidents because "the acts are the same or similar acts, the locations are the same or similar locations and, obviously, a time frame is a factor they have to take into consideration." The trial justice concluded that this evidence was admissible to establish either intent or a lewd disposition on the part of defendant. However, the trial justice refused to permit Natalie to testify about the third incident that occurred when she was fourteen years old.

Natalie then recounted two incidents involving Dubois. The first occurred when she was ten or eleven years old, when she, Julie, and defendant were watching television on defendant's bed when Dubois asked the girls, "If I show you mine, will you show me yours?" Natalie understood this to mean that defendant was asking to see her vagina and that he would show his penis. The second incident occurred when Natalie was approximately ten years old, while swimming in a pool at a family party, defendant swam between her legs, blew bubbles between her legs, and pushed his nose against her vagina. Natalie revealed this incident many years later, when her mother asked her if anything inappropriate ever happened with defendant.

At the start of the defense case and before defendant's brothers-in-law, Ross and Normand,[7] testified, the state sought to limit defendant's examination of the witnesses to exclude inquiry into any biases they might harbor against defendant or why they might have reason to dislike defendant or want to testify against him. The defendant responded that the defense in this case was based, in part, on the defense's contention that there was collusion among the family members against defendant.[8] The defendant argued that the defense was entitled to make liberal inquiry into the bias of a witness—either by cross-examination or otherwise—when it sought to establish a "general scheme to make false charges of claims." The trial justice ruled that the witnesses could testify on some matters, such as verifying or countering facts that came out in the state's case, but they could not testify "to suggest that there was some kind of a plan or scheme without any substantiation * * *." In the absence of a record showing, the trial justice refused to allow "any kind of suggestion that [these witnesses] may be somehow conspiring or scheming to go after this defendant and that they used this plan to influence these complaining witnesses [to falsely testify]." Faced

---

eration for the limited purpose of indicating the defendant's intent or lewd disposition. You may not consider this evidence for any other purpose.

"I specifically charge that you may not use this evidence as proof that the defendant is a bad person and, therefore, probably committed the crime or crimes with which he is charged in this information. You may use it only for the limited purpose, if you decide to use it at all, of determining the defendant's intent or lewd disposition."

7. Ross and Normand are Dorinne's brothers, and Normand is the father of Sarah and Lauren.

8. The defendant sought to advance a theory that Ross and Normand jointly conspired to coach the girls into making false charges of sexual assault against defendant as a result of a fight over their mother's decision to name Dorinne and defendant as administrators of her estate.

with this ruling, defendant failed to make any offer of proof.

The defense called defendant's brother-in-law, Ross, who testified that when his niece, Sarah, was around seven or eight years old she told him that defendant had exposed himself to her. He further testified that defendant was his friend at the time and he just shrugged off the disclosure because he did not believe it. It was only years later, when Ross began hearing about other accusations against defendant by family members, that he became "devastated to find out that I had five of them that were molested." The defendant objected to this statement because there were only three complaining witnesses at that point and the statement suggested the existence of two more victims. The response was stricken from the record. The trial justice denied defendant's motion to pass the case.

The jury returned a guilty verdict against defendant on all five remaining counts. The defendant's motion for a new trial was denied, he was sentenced, and a judgment of conviction entered on May 20, 2009. The defendant timely appealed.

## Analysis

### I

### Motions to Pass

The defendant assigns error to the decision of the trial justice denying defendant's motions for a mistrial. "It is well settled that a decision to pass a case and declare a mistrial are matters left to the sound discretion of the trial justice." *State v. Barkmeyer*, 949 A.2d 984, 1007 (R.I.2008) (quoting *State v. Suero*, 721 A.2d 426, 429 (R.I.1998)). We often have stated that "the trial justice has a 'front row seat' during the trial so that he can best evaluate the effects of any prejudice on the jury." *Id.* (quoting *State v. Tem-*

*pest*, 651 A.2d 1198, 1207 (R.I.1995)). "The ruling of the trial justice * * * is accorded great weight and will not be disturbed on appeal unless clearly wrong." *Id.* (quoting *State v. Mello*, 472 A.2d 302, 304 (R.I.1984)).

Furthermore, if the trial justice provides the jury with an adequate cautionary instruction, this Court assumes that the jury followed it unless "some indication exists that the jury was unable to comply with the instruction." *Barkmeyer*, 949 A.2d at 1007 (citing *State v. Powers*, 566 A.2d 1298, 1304 (R.I.1989)). However, no cautionary instruction can cure a remark that the trial justice finds "so inflames the passions of the jury as to prevent [its] calm and dispassionate examination of the evidence." *Id.* (quoting *State v. Brown*, 522 A.2d 208, 211 (R.I.1987)). In order to determine whether the remark is prejudicial, the trial justice "must evaluate the probable effect of the statement on the outcome of the case by examining the remark in its factual context." *State v. Yelland*, 676 A.2d 1335, 1337 (R.I. 1996) (quoting *State v. Ware*, 524 A.2d 1110, 1112 (R.I.1987)).

The defendant argued that Lauren's statement that she "hated Dave," made in response to the state's inquiry into her relationship with defendant after the summer she spent living and working with him, was so inflammatory that it warranted a mistrial. When a trial justice considers a motion for a mistrial, he or she must assess the potential prejudicial impact of that statement on the jury and whether it will cause the jury to "become so inflamed that their attention [is] distracted from the issues submitted to them." *State v. Gautier*, 950 A.2d 400, 417 (R.I.2008) (quoting *State v. Bolduc*, 822 A.2d 184, 186 (R.I.2003)).

The record discloses that Lauren had described the two incidents that changed the nature of her relationship with defendant before she testified that she hated him. Lauren already had testified that defendant played sexual games with her; in one such instance defendant had her touch his penis, and on another occasion he touched her breast area. It is difficult to conclude that Lauren's statement that she "hated Dave," an opinion that reasonably could be inferred from her prior testimony, would be so harmful or prejudicial as to inflame the passions of the jury sufficient to warrant a mistrial. The sting of the remark further was diminished by the trial justice's cautionary instruction to the jury to disregard the response. Accordingly, we are satisfied that the trial justice properly assessed the probable effect of the remark and provided adequate cautionary instructions. Further, there is no suggestion in this record that the jury was unable to adhere to the trial justice's instruction.

■ The defendant also argued that the trial justice erred in refusing to grant a mistrial after Ross's statement that "I was devastated to find out that I had *five* of them that were molested," when there were less than five complainants in the counts that were submitted to the jury. The defendant's motion to strike this testimony was granted. At a sidebar conference, the trial justice noted that "I told [the jury] to disregard it, but * * * if they were counting on their fingers, they've heard from five people" (with whom defendant allegedly had inappropriate contact). Clearly, the trial justice adequately assessed the potential impact of the statement on the jury and concluded that the jury would not be so inflamed as to be distracted by the issues before it. The trial justice also made it clear to the jury that it was to disregard the witness's response.

Based on our careful review of the record, we are satisfied that the trial justice properly weighed the potential impact of the statements from these witnesses, and that he did not exceed the bounds of his discretion in denying defendant's motions for a mistrial.

## II

### Limited Witness Testimony

■ The defendant asserts that the trial justice erred in limiting his examination of Ross and Normand, and frustrated defendant's attempt to proceed on a theory that these two family members were acting in collusion in order to have defendant falsely accused of these charges. This allegation is without merit.

■ This Court repeatedly has recognized the well-established, constitutionally-protected right of a criminal defendant to effective cross-examination of the prosecution's witnesses. *State v. Brown*, 709 A.2d 465, 473 (R.I.1998); *State v. Doctor*, 690 A.2d 321, 327 (R.I.1997). The defendant also has the right to present a defense in a criminal case and to pose leading questions to adverse witnesses. *See Doctor*, 690 A.2d at 327 (concluding that effective cross-examination is integral to the presentation of a full and fair defense under the state and federal constitutions); *State v. Casiano*, 667 A.2d 1233, 1241 (R.I.1995) (stating that the "compulsory process clause of the Sixth Amendment to the United States Constitution guarantees the right of a criminal defendant to offer the testimony of witnesses on her or his behalf and to compel the testimony of such witnesses if necessary"); *State v. Veluzat*, 578 A.2d 93, 94 (R.I.1990) (holding that effective cross-examination is an essential element of presenting a full and fair defense). This right is not absolute, however. *See Veluzat*, 578 A.2d at 95 ("[T]he scope of

cross-examination, even for the purpose of exposing bias, is not unlimited."). "While this [C]ourt has said that fishing on cross-examination is permitted, the trial justice may ask the fisherperson to demonstrate that there is a reasonable possibility there are fish in the pond before the license is issued." *State v. Bowden*, 473 A.2d 275, 279 (R.I.1984) (quoting *State v. Eckhart*, 117 R.I. 431, 437, 367 A.2d 1073, 1076 (1977)); *see also State v. Brennan*, 527 A.2d 654, 657 (R.I.1987).

The defendant failed to make even a threshold showing that this line of questioning regarding family collusion was tethered to a meritorious defense. The defendant did not make an offer of proof that the examination he intended to embark upon could lead to relevant evidence. *See Brown*, 709 A.2d at 474 (holding that failure to make an adequate offer of proof to indicate that additional cross-examination would have developed probative evidence of bias was sufficient grounds for the trial justice to terminate that line of questioning). In the absence of a showing that there was a good-faith factual basis for this inquiry, the trial justice was vested with the discretion to limit it.

The record discloses that defendant was afforded ample opportunity to cross-examine the various witnesses at trial. The trial justice noted that, notwithstanding defense counsel's vigorous cross-examination of the complainants, nothing was produced that would tend to show that the complaining witnesses were affected or influenced in any way by these elder family members. The trial justice also expressed his concern that this line of inquiry could cause the trial to stray into areas unrelated to the crimes alleged in the information.

We are of the opinion that the trial justice did not abuse his discretion in disallowing this line of questioning. The trial justice's finding that defendant had failed to make any showing to support such a theory was correct, and therefore the evidence was irrelevant and inadmissible.

### III

### Testimony of Uncharged Sexual Misconduct

■ The defendant avers that the trial justice erred by allowing testimony about uncharged incidents of sexual assault in violation of Rules 403 and 404(b). This Court consistently has declared that the admissibility of evidence is a decision within the sound discretion of the trial justice, and will not be disturbed "unless there has been a clear abuse of discretion and the evidence was both prejudicial and irrelevant." *State v. Merida*, 960 A.2d 228, 237 (R.I.2008); *see also State v. Mohapatra*, 880 A.2d 802, 805 (R.I.2005).

■ Rule 404(b)[9] generally prohibits the use of evidence of prior bad acts, wrongs, or crimes "to show the defendant's propensity to commit the crime with which he is currently charged." *State v. John*, 881 A.2d 920, 926 (R.I.2005). However, "[e]vidence of other conduct, even of a criminal nature, may be received if it is interwoven with the current charge in a way that tends to establish 'guilty knowledge, intent, motive, design, plan, scheme, system, or the like.'" *Id.* (quoting *State v. Woodson*, 551 A.2d 1187, 1193 (R.I.1988)).

9. Rule 404(b) of the Rhode Island Rules of Evidence states:
    "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable."

This Court recognizes that "[t]he line between Rule 404(b) evidence presented for the impermissible purpose of demonstrating propensity and Rule 404(b) evidence presented for one of the specific non-propensity exceptions is 'both a fine one to draw and an even more difficult one for judges and juries to follow.'" *State v. Rodriguez,* 996 A.2d 145, 150 (R.I.2010) (quoting *State v. Brown,* 900 A.2d 1155, 1160 (R.I.2006)). However difficult the task, the trial justice must exercise his or her sound discretion in fixing that line and deciding whether this type of evidence should be admitted, excluded, or limited. *See State v. Hopkins,* 698 A.2d 183, 186 (R.I.1997) (noting that admission of Rule 404(b) evidence is within the trial justice's discretion). The trial justice also must balance the relevance of the evidence against its remoteness and the potential for improper prejudicial impact. *Id.* In passing on these issues, we look to the trial justice's reasons that underlie the ruling.

In this case, the trial justice clearly articulated the test for admissibility of evidence under Rule 404(b) and carefully considered the testimony proffered by the state regarding uncharged conduct involving Natalie and Lauren. The trial justice noted:

"And the test, obviously, with [Rule] 404(b) is, especially in these areas, is how close in time it is, the nature of the act, the relationship with the party involved; for example, if it's the same person or a sibling, those are critical factors; place is also a factor, and then, of course, you have to do a full [Rule] 403 analysis to decide whether or not it's still so highly prejudicial that it can't come in."

After listening to the anticipated testimony, the trial justice allowed only two of the three uncharged incidents into evidence. The trial justice allowed Natalie to testify that when she was ten or eleven years old and lying on defendant's bed with defendant and Julie, defendant asked "[i]f I show you mine, will you show me yours?" He also permitted testimony about the pool incident, during which defendant swam beneath Natalie's legs, blew bubbles between her legs, and pushed his nose against her vagina. The trial justice noted that at the time the incidents occurred, Natalie was of a similar age as the other complainants, had a familial relationship with defendant (her uncle) and the other complainants, the incidents occurred at either defendant's house or a family home, and the incidents were all similarly playful in nature. Based on these similarities, the trial justice found that there was a sufficient nexus to allow the testimony to come into evidence in accordance with Rule 404(b) to show "this defendant's intent and his disposition toward these youngsters."

After making this determination under Rule 404(b), the trial justice then proceeded to conduct a Rule 403 analysis of Natalie's expected testimony. The trial justice concluded that the testimony was relevant as corroborative of the anticipated testimony from two of the complainants, Emily and Lauren, and that the probative value outweighed its prejudicial effect.

Significantly, the trial justice refused to allow testimony about the third incident that occurred when Natalie was fourteen years old, when defendant allegedly came up behind her, gave her a back rub, and touched her breasts. Under a Rule 404(b) analysis, the trial justice found that this incident was not sufficiently similar to the charged offenses because it was remote in time, lacked the playful or game-like nature of the crimes on trial, and that no other complaining witnesses were present.

In accordance with Rule 403, the trial justice found that the relevance of this evidence, if any, would be substantially outweighed by the danger of unfair prejudice. As a result, he excluded it.

■■■ The trial justice also acknowledged his responsibility to provide the jury with a "cautionary instruction as to * * * the purpose of [this testimony]." When admitting other sexual acts into evidence the trial justice must offer a limiting instruction to guide the jury's consideration of the evidence, *State v. Lamphere*, 658 A.2d 900, 904 (R.I.1995), and caution that it not be used to prove defendant is a bad person or that he acted in conformity with the evidence. *See Mohapatra*, 880 A.2d at 806. Before Natalie testified about the uncharged incidents, the trial justice gave the jury clear instructions regarding the limited purpose of her testimony. The trial justice explained that the evidence was admitted for the "limited purpose of indicating the defendant's intent or lewd disposition," and he declared that the jury may not consider the evidence for the purpose of proving that "defendant is a bad person and, therefore, probably committed the crime * * *."

■■■ We are of the opinion that this testimony was not admissible for purposes of demonstrating defendant's "lewd disposition" in this case because such evidence is limited to prior acts of sexual misconduct involving the complaining victim and not others. *See Mohapatra*, 880 A.2d at 806 n. 4 (stating that the "lewd disposition" exception may only apply to "prior sexual

misconduct committed against the 'particular person,' referring to the victim" (quoting *State v. Jalette*, 119 R.I. 614, 627, 382 A.2d 526, 533 (1978))); *State v. Bernier*, 491 A.2d 1000, 1004 (R.I.1985). At this point in the trial, Natalie was no longer a complaining witness. However, although we are satisfied that the trial justice erred in listing lewd disposition as one of the grounds for which the jury could consider Natalie's testimony, he did not err in instructing the jury that the testimony was admissible for the limited purpose of demonstrating defendant's sexual intent.

Second-degree child molestation sexual assault is a specific intent crime, and requires that the defendant's contact with the victim was done "for the purpose of sexual arousal, gratification, or assault." [10] *State v. Coningford*, 901 A.2d 623, 629 (R.I.2006) (quoting G.L.1956 §§ 11–37–1(7) and 11–37–8.3); *Mohapatra*, 880 A.2d at 808; *State v. Tobin*, 602 A.2d 528, 534, 535 (R.I.1992). The state bears the burden of proving the defendant's specific intent beyond a reasonable doubt. *See Tobin*, 602 A.2d at 535. Natalie's testimony about the swimming pool incident and the "[i]f I show you mine, will you show me yours?" game is conduct that is suggestive of the defendant's intent to commit acts for purposes of sexual arousal or gratification. Based on this record, and mindful that the question of admissibility of the evidence at trial is an exercise of discretion on the part of the trial justice, we cannot say that the trial justice abused his discretion in admitting this testimony. Additionally, we are satisfied that the trial justice's limiting

---

**10.** Section 11–37–8.3 states in pertinent part that "[a] person is guilty of a second degree child molestation sexual assault if he or she engages in sexual contact with another person fourteen (14) years of age or under." And § 11–37–1(7) defines "sexual contact" as "the intentional touching of the victim's or accused's intimate parts, clothed or unclothed, if that intentional touching can be reasonably construed as intended by the accused to be for the purpose of sexual arousal, gratification, or assault."

instruction to the jury that the evidence was admissible on the question of the defendant's intent was correct.

## Conclusion

For the reasons set forth above, we affirm the Superior Court's judgment of conviction. The papers in this case may be remanded to the Superior Court.

Justice INDEGLIA did not participate.