**Supreme Court**

No. 2012-161-C.A.

(P1/08-642A)

State                              :

v.                              :

Charles Mitchell.                 :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                         :

v.                            :

Charles Mitchell.             :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**   The defendant, Charles Mitchell (Mitchell or defendant), appeals from a judgment of conviction in Superior Court on two counts of first-degree child molestation and five counts of second-degree child molestation.   On appeal, defendant ascribes error to the trial justice's admission of evidence that he also allegedly molested the complainant's sister.  He further contends that the trial justice erred in denying his motion for a new trial and his request for new counsel prior to sentencing.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

## Facts and Travel

In January 2007, eight-year-old Hannah,[1] along with her mother and two siblings, moved into a third-floor apartment on Burnside Avenue in Woonsocket, Rhode Island.[2]   Hannah's mother, Pamela, had fled to Woonsocket from North Providence in an attempt to escape from

---

[1] To protect their privacy, we have given the victim and her sister pseudonyms.  In addition, we refer to the victim's mother only by her first name.  In so doing, we intend no disrespect.

[2] The background facts provided in the first four paragraphs of the "Facts and Travel" section have been culled from the undisputed testimony at trial.

Emilio Pires, an ex-boyfriend, who was stalking and harassing her. Over the course of the next several months, Pamela and her three children developed a friendship with defendant, who lived in the apartment below them. The defendant took the children on bike rides, bought them candy and ice cream, and gave them gifts. Hannah and her siblings would often go to defendant's apartment to play his video games. The sixty-year-old defendant, whom the children referred to as "Chucky," took on the role of "grandfather figure."

Sometime in late June or early July of 2007, the North Providence Police and the Department of Children, Youth, and Families (DCYF) came to Pamela's apartment in Woonsocket. They informed Pamela that her ex-boyfriend Pires had confessed to sexually molesting Hannah. Hannah had never said a word to Pamela about Pires touching her. Pamela told Hannah that Pires' touching was wrongful and stressed the importance of immediately coming forward were something like that ever to happen again.

By the start of the school year in 2007, Hannah and defendant had become very close. In fact, among the three children, Hannah had the closest relationship with defendant. Around December of 2007, however, Hannah stopped visiting defendant's apartment.[3] Pamela noticed that Hannah seemed depressed but attributed Hannah's sadness to Pires' molestation.

On January 10, 2008, Hannah had just returned home from spending the evening at the home of her best friend, Anna, when Pamela received a telephone call from Anna's stepfather, Aaron Sturtevant. Mr. Sturtevant informed Pamela that Anna had confided to him that Hannah had been "touched" by a man who lived downstairs in her apartment building. Mr. Sturtevant did not, however, provide a name or give any details about when and where the touching

---

[3] The exact date of the last occasion when Hannah visited defendant's apartment is uncertain. All of the relevant testimony, however, suggests that she stopped visiting defendant sometime around December of 2007.

occurred. Immediately upon ending the telephone call with Mr. Sturtevant, Pamela asked Hannah if someone had touched her. Hannah became upset, started crying, and uttered the name "Chucky."

That same evening, Pamela took Hannah to the Woonsocket police station, where a patrolwoman took Hannah's statement. Two weeks later, Hannah underwent a forty-minute interview at the Children's Advocacy Center (CAC). On February 29, 2008, defendant was charged by indictment with two counts of first-degree child molestation in violation of G.L. 1956 § 11-37-8.1 and five counts of second-degree child molestation in violation of § 11-37-8.3.[4]

The defendant was tried before a jury in Providence County Superior Court on July 7, 8, and 11, 2011. Before the case opened to the jury, the trial justice ruled that, pursuant to Rule 404(b) of the Rhode Island Rules of Evidence, the state could introduce evidence that defendant had inappropriately touched Hannah's older sister, Selina. This conversation took place in chambers and was unrecorded. Thereafter, over the course of two days, the state presented six witnesses and defendant testified on his own behalf. We summarize below the relevant testimony and events from trial.

On the first day of trial, Hannah testified about the specific instances of molestation. She recalled that the first incident occurred on Thanksgiving of 2007. After Thanksgiving dinner, Hannah went downstairs to defendant's apartment to play video games. While she was sitting on a reclining chair in defendant's living room, playing a game, defendant approached her and asked her "what an orgasm was." The defendant then sat down on the arm of the chair and squeezed Hannah's breast. He placed his hand underneath Hannah's clothing and began rubbing

---

[4] First-degree child molestation under G.L. 1956 § 11-37-8.1 is the sexual penetration of a child fourteen years of age or under. Second-degree child molestation under § 11-37-8.3 is sexual contact with a person fourteen years of age or younger.

her vagina. When defendant digitally penetrated her, Hannah cried out that defendant was hurting her and told him to stop. Hannah indicated that defendant stopped touching her. Her testimony was unclear as to whether she immediately went upstairs to her family's apartment after the incident or resumed playing video games for some period of time before leaving defendant's apartment.

Although Hannah was frightened of defendant after the incident on Thanksgiving, she and her younger brother returned to defendant's apartment the following day to play video games. Hannah was again seated in the reclining chair in defendant's living room and her brother was seated in a second reclining chair next to her. According to Hannah, defendant pulled down her pants and performed cunnilingus on her. She explained that defendant used a blanket to hide his actions from her brother.[5]

Hannah testified to at least two other instances of inappropriate sexual touching, but she could not recall specific dates. She stated that on one occasion, defendant touched and licked her breasts. On a separate occasion, defendant used his hand to place Hannah's hand on his penis. He then moved Hannah's hand up and down, asking her if "it fe[lt] good." Hannah initially placed the date of this last incident sometime between Thanksgiving and Christmas of 2007. She later suggested that the incident may have occurred on the day after Thanksgiving, contemporaneous with the acts of cunnilingus. Hannah did not mention to anyone what defendant had done to her until she told her friend Anna. She explained that, sometime after the last incident, defendant had threatened to kill her if she told her mother.

---

[5] Hannah's testimony about defendant's use of the blanket was somewhat confused. She initially explained that defendant held up the blanket alongside of her. She later testified, however, that defendant "pulled [the blanket] up and it stayed." Hannah stated that the blanket "was standing."

Next, the state presented Hannah's mother, Pamela. On direct examination, counsel for the state asked Pamela, "did Selina tell you something about * * * [defendant]?" After Pamela answered, "Yes," defense counsel immediately requested a sidebar to place something on the record. At the sidebar, the following exchange occurred:

> "[Defense Counsel]: I just wanted to state that we had a conference regarding the 304 [sic] or 404(b) evidence regarding Selina, and I did make an objection in chambers. And the reason I'm objecting now is so that it would be clear I made it. I don't want to waive any issues at this point. I just want it on the record before the testimony came out.
>
> "The Court: Absolutely. As the Court indicated in conference, the objection is overruled."

When direct examination resumed after the sidebar, state's counsel did not ask Pamela any further questions about the incident involving Selina.

Thereafter, during cross-examination, defense counsel asked Pamela if Selina had revealed that defendant did something to her. Pamela answered that Selina had informed her that defendant had touched her breast. Pamela immediately went downstairs to defendant's apartment to confront him about the incident. According to Pamela's recounting of the conversation, defendant insisted that his elbow had come into contact with Selina's nipple while he and Selina were wrestling. Defense counsel then repeatedly questioned Pamela about continuing to allow her children to visit defendant's apartment:

> "[Defense Counsel]: After that event[,] Selina still went downstairs to visit with [defendant]; correct?
>
> "[Pamela]: Yes.
>
> "[Defense Counsel]: And your two other children[,] you allowed them to go downstairs and visit [defendant]; correct?
>
> "[Pamela]: Yes.

- 5 -

"* * *

"[Defense Counsel]: You hear of an alleged assault but you still let your children go down and see [defendant]?

"[Pamela]: Yes."

After Pamela had finished testifying and the jury had left the courtroom, counsel for the state suggested that defense counsel had waived his earlier objection by using the other bad acts evidence to defendant's advantage on cross-examination. In reply, defense counsel explained that he was trying to mitigate the effects of the evidence, which he knew the state intended to introduce:

"[Defense Counsel]: * * * I did object to it. My objection was overruled. I knew it was coming in. I cannot just stand by and not say[] anything when I know it's going to come in. The only thing I could have done is wait for [Selina] to testify and then recall the mother. I knew it was coming in. I already lost * * *. If [the trial justice] had ruled for me, I would never have questioned that way."

The trial justice stated that he was aware that defense counsel was attempting to preemptively lessen the impact of the other bad acts evidence. He explained that he had therefore decided not to give a cautionary instruction during Pamela's testimony. The trial justice suggested, however, that he would reconsider giving such an instruction when Selina testified.

On the second day of trial, the state presented Selina. She testified that sometime around September of 2007, while she and her younger brother were visiting defendant's apartment, defendant had reached under her shirt and twisted her nipple. She explained that defendant "would always [twist her nipple] outside my shirt as a joke. For some reason he did it inside my shirt." At the time of the incident, Selina was just shy of her twelfth birthday and had begun experiencing some breast development. The touching made her uncomfortable. She forcefully

- 6 -

elbowed defendant to make him stop. Selina then went upstairs and told her mother about defendant's touching.

When she recounted the incident to her mother, Selina tried to minimize the significance of the touching. She intentionally gave her mother the impression that she and defendant were "playing around" and the touching was "not really that big of a deal." Selina did not want to spoil the fun that she and her siblings had with defendant. She confirmed that, after the incident, her mother continued to allow her and her siblings to visit defendant's apartment unsupervised. The trial justice did not give a cautionary instruction either during or after Selina's testimony.

The defendant took the stand in his own defense. He denied ever touching Hannah in a sexual manner or forcing Hannah to touch him. The defendant acknowledged that he took more of an interest in Hannah than in the other two children. He felt badly that Hannah's older sister and children at school teased Hannah. The defendant also denied touching Selina and further denied that he and Pamela had ever had a conversation about his touching Selina.

Upon the conclusion of all evidence, the trial justice instructed the jury. He specifically charged the following:

> "Other conduct. Evidence has been admitted in this trial that on a prior occasion or occasions the defendant has been involved in * * * conduct other than what was charged in this indictment. The defendant has not been charged with this conduct and is only on trial for the offenses charged in this indictment. This evidence * * * has been received solely on the issue of the defendant's intent, motive, or knowledge. This evidence presented is to be considered by you as the jury only for the limited purpose for which it was received."

The trial justice called a sidebar after he finished his instructions to ask counsel if they had any objections to the charge. Neither counsel for the state nor defense counsel mentioned the

instruction on "other conduct." Later that same afternoon, the jury returned a verdict finding defendant guilty on all seven counts of molestation.

On July 21, 2011, defendant moved for a new trial pursuant to Rule 33 of the Superior Court Rules of Criminal Procedure. Thereafter, on July 29, 2011, defendant filed pro se motions to release his court-appointed trial counsel and to request the appointment of new counsel. Notwithstanding defendant's motion to release him, trial counsel represented defendant at a hearing on defendant's motion for a new trial on August 4, 2011. In support of defendant's motion, defense counsel argued that no reasonable jury could have found defendant guilty beyond a reasonable doubt because there were material inconsistencies in Hannah's and Pamela's testimony. The defendant was present at the hearing but did not mention his request for new counsel.

In ruling on defendant's motion, the trial justice explained that the analysis of a new-trial motion required him to consider the evidence in light of the charge to the jury and determine whether reasonable minds could differ. In applying this analysis, however, the trial justice stated, "[i]t's not necessary for this [c]ourt to go through the first two prongs [of the analysis for a new trial motion] because based on the evidence this [c]ourt heard, this [c]ourt is in complete agreement with the jury in this case * * *." Accordingly, the trial justice denied defendant's motion for a new trial.

On November 2, 2011, the date originally scheduled for sentencing, the trial justice instead heard defendant's pro se motion for the appointment of new counsel. The defendant expressed his dissatisfaction with his court-appointed trial counsel and averred that counsel had not contacted him since trial to explain sentencing. Defense counsel stated that he had not contacted defendant because he believed that, as a court-appointed attorney, he was duty-bound

not to bill the state for any further work on defendant's case once he had received defendant's motion to have him withdraw as counsel. He assured the trial justice that he was willing to represent defendant at sentencing, provided that defendant would cooperate with him.

The trial justice informed defendant that the proper vehicle to address the adequacy of his counsel's representation is an application for postconviction relief. He emphasized that trial counsel was in a better position to represent defendant at sentencing than a new attorney who would have to rely solely on a transcript, without the benefit of having witnessed what occurred at trial. The trial justice concluded that defendant had failed to offer an adequate reason to justify further delaying the final resolution of the case. He therefore denied defendant's request for new counsel.

On November 10, 2011, the trial justice sentenced defendant on each count of first-degree molestation to forty years, twenty-eight years to serve and twelve years suspended with probation, and six years to serve on each count of second-degree molestation, all counts to run concurrently. On November 15, 2011, defendant filed an appeal to this Court.[6] A final judgment of conviction and commitment entered on March 20, 2012.[7]

## II

### Issues on Appeal

On appeal, Mitchell contends that the trial justice erred in admitting evidence of his alleged molestation of Selina. He further argues that the trial justice committed reversible error by failing to give a timely or adequate cautionary instruction on other bad acts evidence.

---

[6] Although defendant filed his notice of appeal prior to the entry of final judgment, we deem his appeal timely. See State v. Lopez, 45 A.3d 1, 9 n.18 (R.I. 2012).

[7] The "Judgment of Conviction and Commitment" omits count 2. The omission, however, is of no consequence since defendant received concurrent sentences of twenty-eight years to serve on both counts 2 and 6.

Mitchell additionally ascribes error to the trial justice's denials of his motion for a new trial and his request for new counsel. In countering defendant's arguments, the state asserts that defendant failed to preserve properly his objections to either the admission of the other bad acts evidence or the cautionary instruction.

## III

### Standards of Review

"We have long held that 'decisions concerning the admissibility of evidence are within the sound discretion of the trial justice * * * .'" State v. Martinez, 59 A.3d 73, 85 (R.I. 2013) (quoting State v. Gaspar, 982 A.2d 140, 147 (R.I. 2009)). On appeal, we will not disturb the trial justice's decision "unless there has been a clear abuse of discretion and the evidence was both prejudicial and irrelevant." State v. Dubois, 36 A.3d 191, 199 (R.I. 2012) (quoting State v. Merida, 960 A.2d 228, 237 (R.I. 2008)).

This Court affords deference to a trial justice's ruling on a motion for a new trial. State v. Covington, 69 A.3d 855, 863 (R.I. 2013). "We employ [a] deferential standard of review because 'a trial justice, being present during all phases of the trial, is in an especially good position to evaluate the facts and to judge the credibility of the witnesses.'" Id. (quoting State v. Paola, 59 A.3d 99, 104 (R.I. 2013)). "If the trial justice has complied with [the proper] procedure and articulated adequate reasons for denying the motion, his or her decision will be given great weight and left undisturbed unless the trial justice overlooked or misconceived material evidence or otherwise was clearly wrong." Paola, 59 A.3d at 104 (quoting State v. Smith, 39 A.3d 669, 673 (R.I. 2012)).

We treat "[a] motion requesting a court appointment of alternate or new counsel * * * as a motion for continuance because such a request, if granted, would require the court to continue

the matter and delay its disposition." State v. Powell, 6 A.3d 1083, 1086 (R.I. 2010) (citing State v. Gilbert, 984 A.2d 26, 30 (R.I. 2009)). "[T]he decision whether to grant a defendant's request for a continuance to secure alternative counsel lies within the sound discretion of the trial justice." State v. Navarro, 33 A.3d 147, 153 (R.I. 2011) (quoting State v. Snell, 892 A.2d 108, 120 (R.I. 2006)). That decision will not be disturbed on appeal absent a clear abuse of discretion. Id. (citing Powell, 6 A.3d at 1086).

## IV

## Discussion

## A

## Rule 404(b) Evidence of Alleged Sexual Misconduct

The defendant advances several arguments concerning the trial justice's admission of the evidence of his alleged molestation of Selina. In response, the state asserts that defendant waived any objection to the admission of this evidence by using it to his advantage when cross-examining Pamela. Reiterating defense counsel's explanation at trial, defendant argues on appeal that his counsel was merely attempting to soften the blow of evidence which was certain to be later introduced. As we have explained, however, a trial justice's pretrial ruling to admit evidence is often not a final determination. Merida, 960 A.2d at 238 n.20. Moreover, we note that defendant failed to create any record of the substance of the trial justice's ruling, which apparently took place in chambers. Ordinarily, we will not review a defendant's allegation of error where the defendant has failed to preserve on the record a conversation transpiring in chambers. See State v. Toro, 684 A.2d 1147, 1149 (R.I. 1996). In this case, however, we need not pass on the preservation issues because defendant's arguments are unpersuasive even if preserved.

Rule 404(b) prohibits the admission of evidence of other crimes, wrongs, or acts "to show the defendant's propensity to commit the crime with which he [or she] is currently charged." Dubois, 36 A.3d at 199 (quoting State v. John, 881 A.2d 920, 926 (R.I. 2005)). Thus, in molestation or sexual assault cases, the state may not offer evidence of a defendant's other sexual misconduct "to prove that [the] 'defendant is a bad man, and that he has a propensity toward sexual offenses and, therefore, probably committed the offenses with which he is charged.'" State v. Mohapatra, 880 A.2d 802, 806 (R.I. 2005) (quoting State v. Quattrocchi, 681 A.2d 879, 886 (R.I. 1996)). Rule 404(b) allows, however, for the introduction of evidence of other bad acts if offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. See id.

Even when one of Rule 404(b)'s exceptions is applicable, however, we have held that evidence of a defendant's sexual misconduct involving someone other than the complainant[8] must meet additional requirements before its admission. State v. Coningford, 901 A.2d 623, 627 (R.I. 2006). The proffered evidence must involve a nonremote similar offense. Mohapatra, 880 A.2d at 806. "In addition, the evidence is admissible 'only when [the] exception is relevant to proving the charge lodged against the defendant,' and 'only when reasonably necessary.'" Coningford, 901 A.2d at 627 (quoting Mohapatra, 880 A.2d at 806). Finally, "in sexual assault cases * * * a trial justice is required to issue a cautionary instruction to the jury regarding the limited use of Rule 404(b) evidence even in the absence of a specific request by defense counsel to do so." State v. Garcia, 743 A.2d 1038, 1052 (R.I. 2000).

---

[8] We have consistently distinguished evidence of other sexual misconduct involving the complainant from that involving different victims. See State v. Dubois, 36 A.3d 191, 201 (R.I. 2012) (citing State v. Mohapatra, 880 A.2d 802, 806 n.4 (R.I. 2005)). Only the former may be admitted to show the defendant's "lewd disposition." Mohapatra, 880 A.2d at 806 n.4. Thus, the "lewd disposition" exception is not applicable to the instant matter.

In this case, there is no dispute that the evidence of defendant's touching Selina was nonremote and sufficiently similar to the charged offenses. Instead, defendant argues that the evidence of his alleged molestation of Selina was not relevant to prove any of the exceptions to Rule 404(b). We disagree. Although defendant asserts that intent was not at issue in this case, defendant was charged with five counts of second-degree child molestation. Second-degree molestation is a specific-intent crime that requires the state to prove beyond a reasonable doubt that the defendant touched the victim "for the purpose of sexual arousal, gratification, or assault." Coningford, 901 A.2d at 630 (quoting §§ 11-37-1(7) and 11-37-8.3). We have held on more than one occasion that, when a defendant is charged with second-degree molestation, similar incidents involving other victims are admissible to demonstrate the defendant's intent to sexually gratify. See, e.g., Dubois, 36 A.3d at 201; Coningford, 901 A.2d at 629; Mohapatra, 880 A.2d at 808. Evidence that defendant touched Selina's nipple at a time when her breasts were developing was relevant to show defendant's specific intent to sexually gratify.

The defendant additionally argues that the evidence of his alleged molestation of Selina was not reasonably necessary. Contrary to defendant's assertion, this Court has stated that "[w]hen charges of sexual abuse hinge upon a credibility contest between defendant and child complainant, relevant evidence of prior sexual misconduct is reasonably necessary to support the complainant's testimony." Mohapatra, 880 A.2d at 808 (citing State v. Hopkins, 698 A.2d 183, 187 (R.I. 1997)). Here, there was no physical evidence and no eyewitness testimony presented at trial. As defendant acknowledges, this case turned entirely upon whether the jury believed Hannah. Thus, the evidence of defendant's touching Selina was reasonably necessary to support Hannah's credibility.

Finally, we conclude that the trial justice fulfilled his obligation to give a sua sponte instruction on the Rule 404(b) evidence. The requisite instruction need not be given contemporaneously with the relevant testimony. See Merida, 960 A.2d at 238 n.18. In this case, the trial justice included a cautionary instruction on other bad acts when he instructed the jury at the close of all evidence. Any issue as to the adequacy of that instruction is waived since defendant did not raise an objection prior to the jury's deliberations. See State v. Flori, 963 A.2d 932, 937 (R.I. 2009) ("[n]o party may assign as error any portion of the charge * * * unless the party objects thereto before the jury retires to consider its verdict * * *." (quoting Rule 30 of the Superior Court Rules of Criminal Procedure)). After considering all of defendant's arguments and carefully reviewing the record, we find no abuse of discretion in the trial justice's admission of evidence of defendant's other sexual misconduct.

## B

### Motion for a New Trial

The defendant contends that the trial justice's decision to deny his motion for a new trial is not entitled to deference because the trial justice failed to complete the proper analysis. We afford deference to a trial justice's denial of a motion for a new trial so long as the trial justice has complied with the proper procedure and articulated adequate reasoning. Covington, 69 A.3d at 863. When ruling on a motion for a new trial under Rule 33, the trial justice must complete three steps to fulfill his or her role as the thirteenth juror: "[t]he trial justice must (1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury." Id. (quoting Smith, 39 A.3d at 673). "If, after conducting such a review, the trial justice reaches the same conclusion as the jury, the verdict

- 14 -

should be affirmed and the motion for a new trial denied." State v. Heredia, 10 A.3d 443, 446 (R.I. 2010) (citing State v. Snow, 670 A.2d 239, 244 (R.I. 1996)).

On a motion for a new trial, "the record 'should reflect a few sentences of the justice's reasoning on each point.'" State v. Robat, 49 A.3d 58, 71 (R.I. 2012) (quoting State v. Guerra, 12 A.3d 759, 766 (R.I. 2011)). A trial justice need not, however, refer to all of the evidence supporting his or her decision. Guerra, 12 A.3d at 766. "The trial justice 'need only cite evidence sufficient to allow this [C]ourt to discern whether the justice has applied the appropriate standards.'" Id. (quoting State v Banach, 648 A.2d 1363, 1367 (R.I. 1994)).

Taken out of context, the trial justice's comment that performing the first two steps of the new trial analysis was "not necessary" might give the impression that the trial justice neglected his judicial duties. In the next breath, however, the trial justice clearly stated that he "agrees with the [jury's] outcome based on an independent review of [the] evidence * * *." He expressly found defendant's testimony to be "less than candid." While the trial justice indicated that he would reserve extended comments for sentencing, he summed up the case as "a man of over 60 years old [who] molested an eight-year-old girl, asked her if she knew what an orgasm was, pulled down her pants, and had her touch his penis."

Based on this record, it is sufficiently clear that the trial justice independently reviewed the evidence most relevant to the molestation charges. It is also clear that he rejected defendant's testimony and instead chose to credit the contrary testimony of one or more of the state's witnesses. Cf. State v. Medina, 747 A.2d 448, 449 (R.I. 2000) (trial justice's acceptance of state's witness's testimony was sufficient on motion for a new trial to communicate that trial justice was rejecting any contrary factual testimony). Although we emphasize that the better practice is for a trial justice to perform each step of the analysis on the record, we are satisfied in

this case that the trial justice applied the appropriate standards by independently reviewing the relevant testimony and assessing the credibility of the witnesses. Accordingly, his decision is entitled to the usual deference and will not be reversed absent a clear error or a misconception of material evidence.

The defendant argues that the trial justice misconceived or overlooked material evidence that called into doubt the credibility of Hannah, Selina, and Pamela. Echoing the arguments that he made below, defendant suggests on appeal that it is unbelievable that Selina and Hannah would willingly return, with Pamela's permission, to defendant's apartment after he had allegedly molested them. He also claims that, since Pamela had explained to Hannah the importance of speaking up about Pires' molestation, it is incredible that Hannah would remain silent about defendant's molestation. We find defendant's arguments unavailing.

The "trial justice[] * * * experience[s] firsthand the delivery and demeanor of a witness's testimony." Paola, 59 A.3d at 106 (quoting State v. Ferreira, 21 A.3d 355, 366 (R.I. 2011)). Thus, this Court affords great deference to the credibility assessments of a trial justice "who has actually observed the human drama that is part and parcel of every trial and who has had an opportunity * * * to take into account other realities that cannot be grasped from a reading of a cold record." Id. (quoting State v. DiCarlo, 987 A.2d 867, 872 (R.I. 2010)).

In this case, Selina described at trial how she had minimized defendant's touching of her breast when she recounted the incident to her mother. Pamela testified that defendant gave her a similar innocuous explanation for the incident. The trial justice, as the first-hand observer, was entitled to credit their testimony and find it plausible that Pamela would continue to allow her children to visit defendant's apartment. In addition, the trial justice was entitled to accept Hannah's testimony that defendant threatened to kill her if she disclosed his abuse to her mother.

Finally, it was clearly the trial justice's prerogative to choose to believe that an eight-year-old girl, who was teased by her peers and her sister, might return to the apartment of an elderly neighbor who had brought her gifts, allowed her to play his games, and shown a special preference for her, despite her doubts about his behavior. We therefore hold that the trial justice did not clearly err in denying defendant's motion for a new trial.

## C

### Request for the Appointment of New Counsel

A criminal defendant's "right to obtain counsel 'is not an unqualified one.'" State v. Bruyere, 751 A.2d 1285, 1287-88 (R.I. 2000) (quoting State v. Kennedy, 586 A.2d 1089, 1091 (R.I. 1991)). A motion requesting the appointment of alternate or new counsel, if granted, requires the hearing justice to continue a matter and ultimately delays the case's disposition. See Powell, 6 A.3d at 1086. Thus, "[a] hearing justice's decision to grant or deny a request for alternate counsel requires a balancing of the presumption in favor of the defendant's right to * * * counsel of [his] choice and the public's interest in the prompt, effective, and efficient administration of justice." State v. Lancellotta, 35 A.3d 863, 867 (R.I. 2012) (quoting Powell, 6 A.3d at 1086). When ruling on a motion for new counsel, the hearing justice should consider the following factors:

> "[1] the promptness of the continuance motion and the length of time requested; [2] the age and intricacy of the case; [3] the inconvenience to the parties, witnesses, * * * counsel, and the court; [4] whether the request appears to be legitimate or merely contrived foot-dragging; [5] whether the defendant contributed to the circumstances giving rise to the request; [6] whether the defendant in fact has other competent and prepared trial counsel ready to pinch-hit; * * * and [7] any other relevant factor made manifest by the record." Id. (quoting Powell, 6 A.3d at 1087).

The defendant argues that it was an abuse of discretion on the part of the trial justice to deny his request for new counsel because the relevant factors weighed in his favor. He emphasizes that his request was not a deliberate attempt to delay the proceedings. After reviewing the record, however, we are satisfied that the trial justice appropriately balanced the public's interest and the defendant's right to counsel of his choosing.

At the hearing on defendant's motion, the state specifically requested that the trial justice promptly proceed with sentencing to provide closure to Hannah. In ruling on defendant's request, the trial justice correctly articulated the balancing test required of him and referenced the relevant factors. He noted that defendant had already been convicted, the court was in possession of both the pre-sentencing report and the relevant sentencing guidelines, and all that remained was for counsel to argue for an appropriate sentence based on those guidelines. The trial justice concluded that defendant's trial counsel was in a better position to make such an argument than a newly appointed attorney who would be forced to rely solely on a transcript, without having witnessed the events at trial. Accordingly, the trial justice stated that the relevant factors did not weigh in favor of delaying sentencing in order to discharge trial counsel, appoint new counsel, and wait for new counsel to read the transcripts. We discern no error in the trial justice's reasoning.

The defendant nevertheless endeavors to persuade us to overturn the trial justice's decision by directing our attention to State v. Farman, 600 A.2d 726 (R.I. 1992). He argues that in his case, as in Farman, there was a complete breakdown of the attorney-client relationship. In Farman, we held that, based on the "unusual circumstances" of that case, it was prejudicial error for the trial justice to deny the defendant's request for a continuance. See id. at 728. After the defendant in Farman had already paid $1,000 to one attorney to investigate the charges against

him, the first attorney assigned the defendant's case to a second attorney who threatened to withdraw unless the defendant paid an additional $2,500 for investigative services. See id. at 726-27. Not only did the second attorney fail to investigate the charges against the defendant, he moved to withdraw in open court on the day trial was scheduled to begin. See id. at 727. That same day, a third attorney whom the defendant had retained to represent him requested a continuance to prepare for trial. See id. The trial justice denied both the second attorney's motion to withdraw and the third attorney's motion for a continuance. See id.

The exceptional facts in Farman are readily distinguishable from those in the instant case. Here, the defendant did not have another attorney ready to pinch-hit. In addition, the defendant's trial counsel did not move to withdraw at the eleventh hour but instead stood up at the hearing and assured the trial justice of his willingness to represent the defendant at sentencing. Finally, the trial justice in this case granted a continuance to enable counsel to prepare for sentencing. Accordingly, we uphold the trial justice's denial of the defendant's request for new counsel.

## V

## Conclusion

For the reasons articulated in this opinion, we affirm the Superior Court's judgment of conviction. The record in this case may be returned to that tribunal.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**    State v. Charles Mitchell.

**CASE NO:**    No. 2012-161-C.A.
(P1/08-642A)

**COURT:**    Supreme Court

**DATE OPINION FILED:**  November 27, 2013

**JUSTICES:**    Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**    Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

    Associate Justice Brian P. Stern

**ATTORNEYS ON APPEAL:**

    For State:  Lauren S. Zurier
                Department of Attorney General

    For Defendant:  Kara J. Maguire
                Office of the Public Defender